THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. AARON BUTLER DONALDSON, Plaintiff in Error.

*Opinion filed June 21, 1912.*

1. CRIMINAL LAW—*action on motion for change of venue can not be reviewed unless evidence is preserved.* The action of the court on a motion for a change of venue upon the ground of the prejudice of the inhabitants of the county cannot be reviewed unless the evidence upon which the court acted is preserved in the record.

2. SAME—*what must appear from affidavit for continuance for absent witnesses.* An affidavit for a continuance on account of the absence of witnesses is properly denied unless it is made to appear that there is a reasonable probability that the absent witnesses can be procured to attend at the next term of court.

3. SAME—*affidavit for continuance must state what has been done to procure attendance of witnesses.* An affidavit for a continuance on account of the absence of witnesses must state facts from which the court can determine whether diligence has been used to procure their attendance, and it is not sufficient to merely state affiant's conclusion that he has been diligent in that regard.

4. SAME—*court may permit other attorneys to assist State's attorney.* The court, in a criminal case, may, in the exercise of sound discretion, permit counsel paid by private persons to assist the State's attorney, and such action is not ground for a reversal unless it is clear that the trial court abused its discretion to the manifest prejudice of the accused.

5. SAME—*one good count to which evidence is applicable will sustain a conviction.* One or more good counts to which the evidence is applicable will sustain a conviction even though there may have been other faulty counts in the indictment, which the court should have quashed on the motion of the accused.

6. SAME—*when form of count in confidence game indictment is sufficient.* A count in a confidence game indictment is sufficient in form which charges that the accused feloniously and by means and by use of the confidence game obtained divers checks and drafts, a more particular description of which was to the grand jury unknown, and that the said checks and drafts were of the value of $10,000 and were the personal property of a certain named person.

7. SAME—*fact that grand jury was selected less than twenty days before term is not fatal.* The mere fact that the grand jury which returned the indictment was selected less than twenty days

before the first day of the term is not fatal to the indictment nor ground for reversal of a conviction thereon, as the provision of the statute in question is directory and is for the benefit of the sheriff and the grand jurors and not for the protection of the rights of persons accused of crime. (*Marsh* v. *People,* 226 Ill. 464, distinguished.)

8. SAME—*when statute specifying time for performing official act is directory, only.* A statute specifying the time within which a public officer is to perform an official act regarding the rights and duties of others will be regarded as directory, merely, unless the nature of the act to be performed or the language used shows that the designation of the time was intended as a limitation upon the power of the officer.

9. SAME—*motion for bill of particulars is addressed to discretion of the court.* A motion for a rule on the State to furnish a bill of particulars to the accused before entering upon the trial is addressed to the sound discretion of the court.

10. SAME—*when marking instruction as to form of verdict is not error.* Where an instruction giving the jury the forms of verdict of guilty and not guilty is written in paragraphs upon one sheet of paper, the fact that the court endorses the word "given" on the margin of the instruction opposite the paragraph giving the form of a verdict of guilty is not ground for reversal. (*People* v. *Marks,* 251 Ill. 475, distinguished.)

11. SAME—*when an instruction need not expressly embody element that stocks sold were not worth the price paid.* In a confidence game prosecution for the sale of worthless stocks, if an instruction requires the jury, in order to convict the accused, to find, from the evidence, that he "cheated and swindled" the other party, it is not necessary that it expressly embody the element that the stocks sold were not worth the full amount paid for them.

12. SAME—*what is not an improper reference to failure of accused to testify.* In a prosecution for the confidence game, where the accused does not testify and a witness for the State testifies to a conversation with the accused, it is not an improper reference to the failure of the accused to testify for the State's attorney to call attention to the fact that the testimony of the witness to such conversation has not been denied.

13. SAME—*evidence of similar transactions is admissible in a confidence game prosecution.* In a confidence game prosecution, evidence of other similar transactions between the accused and the prosecuting witness, both before and after the one on which the indictment is based, and of similar transactions between the accused and other persons, is admissible.

14. SAME—*when person is guilty of the confidence game.* One who, by making love to the daughter of a wealthy man, obtains his confidence and by means of gross fraud and misrepresentation secures a large amount of money from him for worthless mining stocks is guilty of obtaining money and property by means of the confidence game.

WRIT OF ERROR to the Circuit Court of Christian county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

HILL & BULLINGTON, and W. B. McBRIDE, for plaintiff in error.

W. H. STEAD, Attorney General, ARTHUR YOCKEY, State's Attorney, and FRED H. HAND, (JOHN E. HOGAN, and C. ORRICK BISHOP, of counsel,) for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Aaron Butler Donaldson was tried and convicted in the circuit court of Christian county upon an indictment charging him with the confidence game. The indictment contains seven counts. At the close of the evidence for the prosecution a motion was made to instruct the jury to find the defendant not guilty as to each of the counts of the indictment. The motion was sustained as to the first, second, fourth, sixth and seventh counts and overruled as to the third and fifth counts, and exceptions were duly preserved to the ruling.

Omitting formal parts, the third count of the indictment charged "that Aaron Butler Donaldson, on, to-wit, the 20th day of November, A. D. 1909, at and in the county aforesaid, did unlawfully and· feloniously obtain divers goods and chattels, to-wit, checks and drafts, and that a more particular description of which is to said grand jurors unknown, and that said checks and drafts were then and there of great value, to-wit, of the value of $10,000, the personal property then and there of the said James

H. Downs, by means and by use of the confidence game." The fifth count charged "that Aaron Butler Donaldson, on the 20th day of November, A. D. 1909, at and within the county aforesaid, did then and there unlawfully and feloniously obtain from James H. Downs his property of the value of $10,000, the property of said James H. Downs, by means and by use of the confidence game."

Before the trial was entered upon plaintiff in error made successive motions for a change of venue on account of the prejudice of the inhabitants of the county of Christian, for a continuance, to quash the indictment and each count thereof, and for an order denying to C. Orrick Bishop and John E. Hogan the privilege of appearing as assistants to the State's attorney in the prosecution of plaintiff in error. These motions were overruled and exceptions duly preserved by plaintiff in error.

Upon the hearing of the motion for a change of venue both parties submitted affidavits upon the question of the prejudice of the inhabitants of the county. These affidavits are not preserved in the record and the ruling of the court upon that motion is therefore not saved for review. An application for a change of venue in a criminal case on account of the prejudice of the inhabitants of the county is addressed to the sound legal discretion of the trial court, subject, of course, to review in case it appears to have been abused. (*Price* v. *People,* 131 Ill. 223.) But in order to obtain a review of the action of the court in denying a change of venue it is necessary that the record and abstract should contain the evidence upon which the court acted.

The motion for a continuance at the November term was based on the absence of C. E. Fryberger and Paul Fayne, both of whom were non-residents of the State of Illinois. Neither of said witnesses had been served with a subpoena, and one of them was a resident of Missouri but temporarily absent in Arkansas. The other was formerly

a resident of St. Louis, Missouri, but had been gone for a year, and the affidavit stated that plaintiff in error had been unable to locate him but had recently learned that he was in Denver, Colorado. The indictment in this case was returned at the March term, 1911, and plaintiff in error was brought into court at that term and entered into a recognizance for his appearance at the August term. The case was continued at the March term, but it does not appear at whose instance a continuance was had. At the August term the case was continued, on motion of plaintiff in error, until the November term. The indictment had been pending from March until November. Plaintiff in error had had ample time to prepare for trial. The affidavit for a continuance states no facts from which it could reasonably be expected that these non-resident witnesses would voluntarily come to this State and testify in case a continuance was granted. The affidavit shows that the witness Fryberger knew of the prosecution against the plaintiff in error and that he had promised him to attend the court and testify in his behalf. Instead of doing so the affidavit shows that he went on a hunting expedition to Arkansas. While plaintiff in error states in his affidavit that he expected to be able to have the two witnesses named in attendance upon the court at the next term, no facts are stated showing that there was a reasonable probability that those witnesses could be induced to voluntarily come into a foreign State to testify for plaintiff in error. An affidavit for a continuance on account of the absence of witnesses is properly denied unless it is made to appear that there is a reasonable probability that the absent witnesses can be procured at the next term of court. The affidavit is defective, also, in respect to the diligence shown in trying to secure the attendance of the absent witnesses. The showing in this respect is merely that the affiant had made every effort possible to locate the witness Fayne and to procure the attendance of the witness Fryberger, but he

fails to state any fact showing diligence and rests his application upon his conclusion that he has used such diligence as the law requires. The affidavit should have stated the facts showing what efforts had been made, so that the court might determine whether a proper degree of diligence had been exercised.

There was no abuse in the discretion vested in the trial court in permitting counsel employed by private parties to assist in the prosecution. This was a matter in the sound discretion of the trial court, to be exercised with reference to the situation before the court, and a judgment of conviction will not be reversed unless it appears that the trial court has abused its discretion to the manifest prejudice of the defendant. In *Hayner* v. *People,* 213 Ill. 142, this court decided that it was not beyond the power of the court to permit counsel paid by private parties to assist the State's attorney where there is no oppression of the defendant or injustice to him, and that rule was again approved in the late case of *People* v. *Blevins,* 251 Ill. 381.

Plaintiff in error's most serious contention appears to be that the court erred in overruling his motion to quash the indictment. Some of the objections to the indictment only apply to certain counts. If either the third or fifth count is sufficient we would not reverse the judgment because the court erred in refusing to quash some other defective count. A general verdict upon an indictment containing several counts, some of which are good and others faulty, will be referred to the good counts and sustained unless the contrary appears. If the jury disregarded the faulty counts and convicted the plaintiff in error upon sufficient evidence under a good count, no harm could have resulted from the failure of the court to quash such defective counts. (*Hiner* v. *People,* 34 Ill. 297.) The third count of the indictment is sufficient in form under previous holdings of this court. *Maxwell* v. *People,* 158 Ill. 248; *DuBois* v. *People,* 200 id. 157; *Cochran* v. *People,* 175 id. 28.

The most serious objection to the indictment urged by plaintiff in error applies to all of the counts, and is based on the admitted fact that the grand jury that returned the indictment was selected by the county board nineteen days before the first day of the term of court, when the statute requires that it shall be the duty of the county court, at least twenty days before the sitting of the court, to select twenty-three persons possessing the qualifications specified in section 2 of the act relating to jurors, and, as near as may be, a proportionate number from each town or precinct, etc. So far as we are advised this court has never decided the question raised by this objection to the indictment. In *Marsh* v. *People,* 226 Ill. 464, the question was presented whether an indictment found by a grand jury that had not been selected at a regular or special meeting of the county board was a valid indictment, and it was held that it was not. This case is relied on with great confidence by plaintiff in error as sustaining the objection made to the indictment in this case, but that case is distinguishable from the one at bar in that in the *Marsh case* the grand jury had been selected by the county board when it was not convened in regular or special session and therefore had no power to select a grand jury. In the present case the county board was regularly convened and had full power to exercise the functions of a county board, and the most that can be said against the validity of its act in selecting the grand jury is, that the power was irregularly or erroneously exercised. The holding in the *Marsh case* is based on a total want of power in the county board to select a grand jury or do or perform any other official act. There a portion of the members of the county board came together, not in a regular or special meeting, but as individual members of the board, and assumed to perform the official work of the county board, which could only be performed when the board was in session. That case is not like the case at bar. There is some language of this court

in the *Marsh case* which, if not construed in connection with the matter then before the court, might lend some support to plaintiff in error's contention. It is said in that case, on page 472: "It would be the adoption of a dangerous policy, and one liable to be productive of much evil, to lay down the rule that public officers may disregard the plain provisions of the statute directing them as to the manner of discharging their official duties, and hold that their acts performed in disregard of the statutory requirements would be as valid as if those requirements had been observed." The language above quoted was not intended to apply to every possible omission of public officials to follow the letter of the statute. If so understood and applied, all statutes imposing duties upon public officers would be held to be mandatory. As applied to the particular defect in the exercise of the power of selecting a grand jury then under consideration the language quoted is strictly accurate, but it was not intended in that case to hold that every statutory requirement concerning public officers is a matter *stricti juris* and to be obeyed to the very letter, under no less penalty than having the entire action of such officers declared void. The general rule is, that where a statute specifies the time within which a public officer is to perform an official act regarding the rights and duties of others it will be considered as directory, merely, unless the nature of the act to be performed or the language used shows that the designation of time was intended as a limitation of the power of the officer. (*Whalin* v. *City of Macomb,* 76 Ill. 49.) The grand jury in the case at bar was selected nineteen days before the first day of the court. The requirement that twenty days shall intervene between the selection of the grand jurors and the day upon which they are to appear for service is not designed to protect the rights of persons whose cases are to be investigated and passed upon, but is designed for the convenience of the sheriff in serving the jurors and of the jurors them-

selves.  It could make no possible difference to a defendant whose case was to be investigated, whether the grand jury was selected twenty days or ten days before the first day of court.  The statute authorizes a ·special grand jury to be summoned when no regular grand jury is in attendance and a necessity exists for a grand jury, and it is no uncommon thing for a grand jury to be ordered, summoned, empaneled, complete its duties and be discharged on the same day.  There is no provision in our law for notifying persons beforehand that an effort is to be made to procure an indictment against them.  On the contrary, the whole policy of the law is to keep such knowledge from persons whose cases are being presented to the grand jury.

This question has been before courts in other jurisdictions and the same conclusion has not always been reached.  The Supreme Court of Nebraska, in *State* v. *Lauer,* 41 Neb. 226, holds that the statute requiring the selection of the grand jury twenty days before the sitting of the court is mandatory and must be complied with, and that case is approved in *Ellis* v. *State,* 81 Neb. 284.  A similar rule seems to have been followed in Maryland and Mississippi.  (*Clair* v. *State,* 30 Md. 164; *Leathers* v. *State,* 26 Miss. 73.)  In 20 Cyc., on page 1309, it is said:  "The time of selecting and drawing grand jurors or of making out and delivering the list to the proper officer for summons is frequently prescribed by statute.  Statutory provisions of this character have, however, been held to be directory, merely, so that failure to follow them strictly will not vitiate the action of the grand jury."  In support of this text *State* v. *Durham Fertilizer Co.* 111 N. C. 658, and *Kelley* v. *State,* 53 Ind. 311, are cited.  Again, on page 1315 of the same volume it is said:  "Statutes frequently require that grand jurors shall be summoned or that the writ shall issue within a specified period prior to the commencement of the term, but statutes of this character are generally regarded as directory to the sheriff or officer and as being

for the convenience of grand jurors that they may have sufficient notice of the service required of them, and hence if they attend and serve without such notice, the·validity of the organization of the grand jury and of indictments found by it is not affected." The above text is supported by cases cited in the note, from Mississippi, Maine and South Carolina. In *Hughes* v. *State,* 54 Ind. 95, it is said: "If a grand jury regularly selected, without any venire having been issued, without being summoned and without any notice whatever, were returned into court, empaneled, sworn and charged, then the subsequent proceedings would not be irregular merely because they had not been summoned according to a directory statute. The object of the statute is to get the grand jury into court. When that purpose is accomplished its force is at an end." In *Johnson* v. *State,* 33 Miss. 363, a statute requiring that grand jurors should be summoned at least five days before the first day of court was held to be merely directory to the sheriff and for the convenience of jurors that they may have sufficient notice of the service required of them, and in that case it is said: "The time of summoning the jurors, except so far as their own convenience is concerned, is quite an immaterial thing, which in nowise could affect their official acts." See, also, *State* v. *Ansalem,* 15 Iowa, 44, and *Crawford* v. *State,* 81 Ga. 708.

In our opinion the statute requiring grand jurors to be selected twenty days before the first day of the court is merely directory, and when a grand jury otherwise legally constituted, empaneled and sworn returns a true bill of indictment in open court, it should not be set aside as null and void simply because the grand jury finding the same was not selected twenty days before the sitting of the court. The motion to quash the indictment was properly overruled.

The motion of plaintiff in error for a rule requiring the State to furnish a bill of particulars before entering

upon the trial presented a matter resting in the sound dis-
cretion of the court, and there was no error in denying the
same. *People* v. *O'Farrell,* 247 Ill. 44; *People* v. *Weil,*
243 id. 208.

The court gave the jury the following instruction:

"The court instructs the jury as to the form of your
verdict: If you find the defendant guilty then the form
of your verdict will be:

" 'We, the jury, find the defendant, Aaron Butler
Donaldson, guilty of obtaining the property of James H.
Downs by means and use of the confidence game, in
manner and form as charged in the indictment.'

"If you find the defendant not guilty then the form
of your verdict will be:

" 'We, the jury, find the defendant not guilty.'

"Write your verdict on a separate sheet of paper
and subscribe your names thereto."

This instruction was all on one sheet of paper, on the
left-hand margin of which, and opposite the form to be
used in case the jury convicted the defendant, was writ-
ten the word "Given." The instruction had no other writ-
ing upon it. Plaintiff in error insists, under the authority
of *People* v. *Marks,* 251 Ill. 475, that the giving of this
instruction is reversible error. In the *Marks case* the court
merely handed the jury two slips of paper, on one of which
was written a form of verdict finding the defendant guilty,
with the word "Give" written on the margin thereof. The
other was a form of verdict finding the defendant not
guilty, with no notation or writing of any kind thereon.
There was nothing in that case to indicate to the jury what
use was to be made of the two forms of verdict, and it
was held by this court that the word "Give," written on the
margin of the form finding the defendant guilty, was liable
to lead the jury to believe that that was the form which
the court thought ought to be used. In this case an in-
struction was given fully explaining the two forms of ver-

dict and under what conditions each might be used. Both forms of verdict were on one piece of paper and constituted but one instruction, and it was not necessary to write the word "Given" opposite each sentence or form of verdict contained in the direction. This case is clearly distinguishable from the *Marks case.*

The court gave eleven instructions at the instance of the People. Plaintiff in error assigns error upon the giving of the third, fourth, fifth and eleventh. The third instruction purports to embody the facts which the jury are required to find in order to justify a verdict of guilty. The point is made that the instruction omits to include the fact that the stock sold by plaintiff in error to the prosecuting witness was not worth the amount of money paid for it. It is true that this instruction does not in so many words require the jury to believe that the stock sold was worth less than the price paid, but that fact is included in the statement in the instruction that the prosecuting witness was "cheated and swindled" in the transaction. The jury, under the instruction, were required to believe, from the evidence, beyond a reasonable doubt, that the prosecuting witness had been "cheated and swindled" in the transaction out of which the prosecution grows. The prosecuting witness could not have been cheated and swindled by the purchase of an article that was worth all he paid for it. The third instruction is not open to the objection urged against it. The objections made to the fourth, fifth and eleventh instructions are not tenable. They are exceedingly technical objections and do not require discussion.

Plaintiff in error offered forty-five instructions, eighteen of which were given and twenty-seven refused. Some of those given were slightly modified by the court. Plaintiff in error assigns error upon the modification of the given instructions and upon the refusal of the court to give some of those refused. We have carefully considered these several objections. The eighteen instructions as modified by

the court fully and fairly submitted to the jury every proposition of law applicable to the facts. Plaintiff in error has no just cause of complaint on account of the modifications of the given instructions or the refusal of those not given.

A witness for the prosecution testified to a conversation had with plaintiff in error. Plaintiff in error was not a witness in his own behalf. In the argument of the case to the jury the State's attorney, in discussing this evidence, stated that the evidence of the witness detailing the conversation had not been denied. Plaintiff in error complains that this amounted to a reference to or a comment upon his failure to testify in his own behalf. This court has uniformly held that it is highly improper to comment upon or call attention to the fact that the defendant in a criminal case has not testified in his own behalf. (*Quinn v. People,* 123 Ill. 333.) But we do not regard the statement of counsel for the People in this case as in violation of the rule. The jury knew that the defendant had not testified, but whether this was because he was incompetent, or for some other reason, the jury were not advised. The bare statement that the witness who had detailed a conversation with the plaintiff in error stood uncontradicted was not equivalent to telling the jury that the defendant had the right to testify and had failed to do so. The language of the State's attorney in this connection was: "And the evidence of the witness stands unimpeached, undenied and unimpeachable, and I say in all fairness that a man who would do a series of things of that kind belongs, and his home is, in the penitentiary." The court overruled an objection to this statement, and while we do not approve of the argument, we do not think that it is equivalent to a comment upon or a reference to the failure of plaintiff in error to testify.

There are some other matters complained of in the argument of counsel before the jury which we have exam-

ined, and our conclusion is that the objections, in so far as they were not sustained by the court below, are not serious enough to require a reversal of this judgment.

Plaintiff in error complains of the admission of evidence of other transactions of his with the prosecuting witness than the one upon which the indictment is based, both before and after the date of the particular transaction involved in this prosecution, and also evidence of similar transactions of plaintiff in error with other persons. The rulings of the court in this regard are sustained by the decisions of this court. *DuBois* v. *People, supra; People* v. *Weil, supra; Same* v. *Same,* 244 Ill. 176.

Plaintiff in error's final contention is, that the verdict is not supported by the evidence and that the court erred in refusing to direct a verdict of not guilty. The transaction upon which the indictment is based was a sale of mining stocks by plaintiff in error to J. H. Downs, for which Downs paid $10,000 by a draft on a bank. This particular transaction was one of a series of sales of stock made by the plaintiff in error to J. H. Downs and his daughter, Mrs. Ora B. Ridgely. Plaintiff in error was a married man, residing in St. Louis, whose business is that of a stock broker. The prosecuting witness, Downs, and his daughter, resided in Assumption, Illinois. Plaintiff in error first met Mrs. Ridgely in St. Louis through some friends of hers. She was a widow possessed of some means. Her father was quite wealthy. Plaintiff in error first interested Mrs. Ridgely in some mining properties in south-east Missouri. She went to see the mines, but having no knowledge of such properties she knew nothing of their value except what she was told. She purchased stock to the amount of $2000 in April, and later plaintiff in error visited her at her home in Assumption and she put in $1620 more. At this time plaintiff in error asked her if her father had any money, and she told him that he had. He did not meet her father on that visit but subsequently did meet

him.  He became a regular visitor at the Downs home.
He wrote many letters to Mrs. Ridgely, from which it is
apparent that a love affair was mixed up with the mining
transaction.   Mrs. Ridgely testifies that an engagement to
marry had been entered into between her and the plaintiff
in error.   Mrs. Ridgely received several dividends on her
stock of two per cent a month.   Where the dividends came
from does not appear, but it is very clear that they were
not legitimate profits from the mines.   The inference is
quite reasonable that the payment of these fictitious divi-
dends was merely for the purpose of inducing Mrs. Ridgely
and her father to make further investments at the solicita-
tion of plaintiff in error.   In August the prosecuting wit-
ness, Downs, made his first investment in stocks at the
solicitation of plaintiff in error.   He put in $9000.   After-
wards he put in $35,000 more, and finally put in $18,000
at another time, $10,000 of which is the basis of the pres-
ent prosecution.   Fictitious dividends were paid to Downs,
also, on his first purchase.   The details of all these various
transactions are in the record.   To rehearse them in a
chronological order would unnecessarily extend this opin-
ion.   The sum of the whole matter is, that plaintiff in er-
ror made love to Mrs. Ridgely, secured her confidence, and
through her and through his direct representations to the
prosecuting witness obtained the confidence of her father,
and having their confidence he succeeded in obtaining from
them more than $75,000 in cash for mining stocks in dif-
ferent companies, most of which are entirely worthless, and
that in the consummation of these sales plaintiff in error
resorted to false representations and fraud of the grossest
character.   We have carefully examined the evidence in
the case and fully agree with the jury and the trial court
that plaintiff in error is guilty of the offense charged.

The judgment is affirmed.          *Judgment affirmed.*