(No. 22086.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JACK LIEBER, Plaintiff in Error.

*Opinion filed June 20, 1934—Rehearing denied October 3, 1934.*

STONE and DEYOUNG, JJ., specially concurring.
JONES, C. J., and FARTHING and SHAW, JJ., dissenting.

BARRATT O'HARA, and THOMAS LINDSKOG, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, GRENVILLE BEARDSLEY, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

JOHN D. BLACK, WILLARD L. KING, RICHARD YATES HOFFMAN, ERNEST S. BALLARD, and J. F. DAMMANN, (ROBERT W. MILLAR, of counsel,) for the Chicago Bar Association, *amici curiæ*.

WILLIAM McKINLEY, and PAUL E. PRICE, also *amici curiæ.*

Mr. JUSTICE ORR delivered the opinion of the court:

Jack Lieber was indicted, tried and convicted in the criminal court of Cook county for robbery with a gun and sentenced to the penitentiary. By this writ of error he seeks a review and reversal of that judgment.

An opinion was adopted at the last February term of this court reversing the judgment, but at the April term a rehearing was allowed in order that the case might receive our further consideration upon additional briefs then requested to be filed. No question is raised as to Lieber's guilt or innocence or as to the admissibility of evidence or the instructions of the trial court. The sole issue is whether the trial judge erred in refusing to quash the indictment, because, as alleged, it was found by a grand jury not legally constituted.

After his arraignment Lieber pleaded not guilty, but on his motion leave was granted to withdraw this plea and to file a written motion to quash the indictment. On the hearing of this motion to quash, Lieber produced oral and documentary evidence and identified the records of the criminal court with reference to the selection of the grand jury. Several certified exhibits were introduced: (1) A copy of the order directing the clerk to repair to the jury commissioners' office and draw sixty names of persons to appear as grand jurors for the July term, 1933; (2) a copy of the jury commissioners' sheets containing the sixty names and certificate of the commissioners; (3) a copy of the venire directed to the sheriff commanding him to summon the sixty persons so drawn; (4) a photostatic copy of the original return of the sheriff showing purported service by mailing to fifty-six persons and that three were not found and one was dead.

The notations "Accepted," "Excused" and "Not found" were affixed to the original return by the clerk. Twenty-five of the fifty-six summoned jurors were excused before the beginning of the term. When or by whom they were excused is not disclosed, but in any event they do not appear to have been excused by lot or in open court. During the interrogation of the thirty-one remaining grand jurors present six more were excused by the chief justice, who then ordered the first twenty-three persons who had not asked to be excused to take their places in the jury box. He next directed the clerk to place cards containing their names in a hat and add the name of one of the remaining jurors who had not been excused. Out of these twenty-four cards in the hat twenty-three were drawn containing names of those accepted and sworn as grand jurors for the term. This, in substance, is the evidence upon which the trial court based its ruling in refusing to quash the indictment.

The first constitution of this State, adopted in 1818, did not mention the grand jury specifically but did recognize its existence by providing in section 10 of article 8 that no person should for any indictable offense be proceeded against criminally by information, with certain exceptions. The constitution of 1848 mentioned the grand jury by name but made no substantial change in the constitutional provision, and by section 10 of article 13 provided that no person should be held to answer for a criminal offense unless on the presentment or indictment of a grand jury, with certain exceptions not material here. In the constitution of 1870 we find the corresponding provision in section 8 of the bill of rights (article 2) providing: "No person shall be held to answer for a criminal offense, unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary. * * * *Provided,* that the grand jury may be abolished by law in all cases." Neither the

constitution of 1848 nor 1870 defined the grand jury, but it was an institution well known to the common law of England. There, with few exceptions, at least twelve but not more than twenty-three men were sworn for duty, although more than twenty-three were frequently summoned for grand jury service. (4 Blackstone's Com. 302; 1 Chitty on Crim. Law, 310.) Outside of its historical interest, however, the common law grand jury no longer has any legal significance in this State, as the legislature has passed certain statutes governing the subject matter and changing the common law rule.

In the exercise of authority delegated to it by the constitution of 1870 the legislature of this State has enacted two separate statutes relating to grand juries. These two statutes—the Jurors act of 1874 and the Jury Commissioners act of 1897, with their amendments in force prior to July 1, 1933—are both involved in this case. Prior to the enactment of the Jury Commissioners act the Jurors act governed the selection of grand and petit juries throughout the State. The Jury Commissioners act relates only to the manner of preparing, drawing and certifying lists of petit and grand jurors in counties of over 250,000 population— which at present means only Cook county. But, as its provisions disclose, the Jury Commissioners act, while not amendatory of the Jurors act, must be regarded simply as supplemental legislation in nowise affecting the many general provisions of the Jurors act. The necessary inter-relation of these two statutes as to Cook county grand juries selected between July 1, 1897, and January 1, 1934, must be kept in mind to avoid the false inference that the Jury Commissioners act was itself of such wide import as to entirely supersede the provisions of the Jurors act in Cook county. The Jury Commissioners act has no such broad scope, as an examination of its ten unrepealed sections will clearly disclose. On the other hand, the Jurors act is comprehensive, in that its twenty-five sections provide

complete legislation as to the number, duties, powers, qualifications and manner of selection of grand jurors throughout the State. Its provisions, except as to the manner of preparing jury lists and drawing and certifying the same, apply equally and essentially to the courts in all of the counties of this State, including Cook county. For example, section 2 of the Jurors act prescribes certain legal qualifications for "jurors in all counties in Illinois;" section 4 names certain persons who "shall be exempt from serving as jurors;" section 15 provides a fine against any person failing to attend when lawfully summoned as a grand or petit juror; section 17 provides for the appointment of a grand jury foreman and permits twelve grand jurors to return a true bill; section 18 contains the oaths to be taken by the foreman and other members of the grand jury, and section 19 prescribes the manner of making presentments and authorizes the issuance of a special venire for a grand jury. In addition to these important provisions it is also significant that in three separate sections of the Jurors act (sections 9, 16 and 19,) the legislature has designated twenty-three as the full panel or maximum number of persons who shall be selected, certified and summoned to constitute a grand jury. These sections are hereafter commented upon and are only mentioned here, in connection with the other above described sections of the Jurors act, to show which of its numerous provisions must be resorted to in Cook county for a complete administration of the law relating to the selection of grand jurors, because no similar or contrary directions are to be found anywhere in the Jury Commissioners act. It is therefore obvious that the legislature intended the Jurors act to control the number of grand jurors, together with their qualifications, powers, duties, exemptions, penalties for failure to appear, appointment of foreman, oaths, number required to return indictment, presentment of evidence and manner of ordering special venires, all of which provisions apply

equally to Cook county and every other county in this State. If the legislature had intended that the requirements for grand jurors in these respects should be different in Cook county from the remainder of the State, it would have been a simple matter for it to have made such provision in the Jury Commissioners act.

It is argued by the People that the question of the number to be summoned for grand jury service is shrouded in doubt and therefore left to the discretion of the chief justice of the criminal court, since the statute does not expressly prohibit the drawing and summoning of more than twenty-three grand jurors. They seek, also, to justify the practice of summoning more than twenty-three for grand jury service on the theory of contemporaneous construction, because that practice has existed in Cook county for at least forty years. It is true that this court has reviewed many cases tried in the criminal court of Cook county where the grand jury which returned the indictment had been drawn in a manner similar to that in the case at bar. In none of those cases, however, was the question properly raised by motion to quash the indictment with the specific points preserved by a bill of exceptions, as in this case. The case of *People* v. *Graydon,* 333 Ill. 429, is referred to in the People's brief, where seventy-five persons were summoned for grand jury service, but the point was not there raised or preserved in the record as to the excessive number of persons drawn and summoned. It is settled by many authorities in this State that an irregularity in the assembling of a grand jury is waived unless the defendant in apt time raises the question by challenge to the array, or by motion to quash the indictment on the ground that it was not found by a grand jury legally constituted. *People* v. *McCauley,* 256 Ill. 504, and cases cited.

The language of the statute is so simple, so plain and so often repeated that it seems strange that there should

be such a want of compliance with its provisions as this record shows. Its directions are not ambiguous or even debatable, as asserted by the argument in behalf of the People. The three sections of the Jurors act (9, 16, 19) are not qualified, contradicted or supplemented by any word or provision of the Jury Commissioners act. Section 9 of the Jurors act provides: "If a grand jury is required by law or by the order of the judge for any court, the county board in each of the counties in this State wherein such court is directed to be held * * * shall select twenty-three persons possessing the qualifications provided in section 2 of this act, * * * to serve as grand jurors," etc. Section 16 provides: "A full panel of the grand jury shall consist of twenty-three persons, sixteen of whom shall be sufficient to constitute a grand jury." Section 19 states as to special venires that the sheriff shall summon "twenty-three persons, qualified by law, to constitute a grand jury." This language is so specific and so free from any uncertainty or ambiguity that the only directions we could give to the courts of Cook county concerning the proper method of drawing grand jurors is that the statute be read and followed. When the statute says in three different places, first, that the county board shall select twenty-three qualified persons to serve as grand jurors; second, that a full panel of the grand jury shall consist of twenty-three persons, and lastly, that twenty-three persons shall be summoned by the sheriff to constitute a grand jury, it is difficult for us to understand how any serious argument can be advanced that the number who are to be summoned for grand jury service is uncertain. By summoning more than twenty-three for grand jury service, as this record shows has been the admitted practice in Cook county for forty years or more, the courts of that county have not only violated the plain provisions of the statute but have also heaped a large and unnecessary burden upon the tax-payers for jurors' fees, sheriff's fees, mileage and other expenses.

The record in this case clearly shows the futility and extravagance of such loose practice. Under the Jurors act the court, or the judge thereof, has nothing whatever to do with drawing the grand jury—by lot, out of a hat or otherwise. The selecting power is vested by the Jurors act in the board of supervisors in all counties except Cook, where prior to January 1, 1934, the clerk of the court was authorized to select twenty-three persons by drawing their names out of the box provided for that purpose. While the presiding judge may excuse for good cause any of the twenty-three or lesser number which constitute the original panel of the grand jury, he has no express or implied power from anything in the Jurors act or Jury Commissioners act to order more than twenty-three persons summoned for grand jury service, or to eliminate names from the panel by drawing cards out of a hat, or other method of chance. Resort to such practices will be unnecessary if the statute is followed by summoning only twenty-three in the first instance. In *Beasley* v. *People,* 89 Ill. 571, decided in 1878, we defined the word "panel" as equivalent to "list, catalogue, inventory, schedule, register, record," and said it is the "panel" or "list" or "schedule" that shall consist of twenty-three persons and not the grand jury, which required only sixteen to be legally constituted. The *Beasley case* was cited with approval twenty years later by this court in *Gillespie* v. *People,* 176 Ill. 238, and has never since been modified or overruled. From these two decisions and from the three plain provisions of the Jurors act there can remain no doubt in this State that a panel or list of persons to be summoned for grand jury service shall consist of twenty-three and no more.

In further justification of the drawing of sixty names the People chiefly rely upon the provisions of the Jury Commissioners act and particularly the last sentence of section 9 thereof, as follows: "Whenever a grand jury is required by law or by order of the court, it shall be drawn

and certified in like manner," referring to the manner of selecting petit jurors. But this section relates only to the manner of *drawing* and *certifying* names of prospective grand jurors and makes no reference to the *number* to be drawn and certified. The number of persons to be chosen for petit jury service necessarily varies in Cook county, depending upon the number of judges trying cases with juries. Petit jurors may be challenged by the parties in civil and criminal cases, and a sufficient surplus of petit jurors is therefore required to meet this situation. But these circumstances do not exist with reference to grand jurors, and the Jury Commissioners act makes no provision that the court shall determine the number to be summoned. In any event, section 9 only authorized the clerk to repair to the office of the jury commissioners and draw by lot the "necessary number of names" and to thereupon certify such list of names to the sheriff. The necessary number of names, as we have stated, is fixed by the Jurors act at twenty-three. No authority is to be found in this section for a second drawing by lot, either by the judge or by the clerk in the court room, as was done in this case. The only reasonable construction to be given the last sentence of section 9 of the Jury Commissioners act is that the clerk shall draw twenty-three names by lot in the jury commissioners' office to constitute the grand jury, and that the names of these twenty-three grand jurors, when so drawn, shall be certified to the sheriff in like manner as petit jurors are required to be certified. The argument that a larger number of grand jurors is required in Cook county by reason of the dense or shifting population and practical difficulties there existing is not borne out by the record in this case. Here there were sixty persons drawn, and of this number only one was dead and three not found. Twenty-five of these sixty, or more than enough for a full grand jury panel, were excused in some unexplained manner. On this showing, if only the required number of twenty-three persons had been summoned instead of sixty,

and the entire number of four not found were deducted therefrom, it is certain that at least nineteen would have been secured, or three more than the minimum requirement of sixteen, to constitute a grand jury. Regardless of the number found or excused in any given case, the law provides a quick and simple method of filling out the panel.

The Jury Commissioners act was upheld as not being in violation of section 29 of article 6 of the constitution, in *People* v. *Onahan,* 170 Ill. 449. The constitutionality of that act was there sustained only because it was construed as not changing in any way the "organization, jurisdiction, powers, proceeding and practice" of the courts of Cook county in the selection of grand jurors, as such powers and practice then existed and as they were then uniformly enjoyed by all courts of the State of equal rank or class. At pages 458-59 we said: "The statute does not relate to or affect the proceedings or the practice of the court. The same officer (the clerk of the court) draws the names of jurors from the jury box. * * * We are unable to see from any reasonable standpoint how the proceedings or practice of the court can be affected by this statute. * * * Both grand and petit juries must be summoned and impaneled in such counties, so far as regulated by law, as before the passage of the act in question." It was only because the act was construed as not conferring additional powers upon the courts or the judges in counties of over 250,000, and because the practice of such courts was not changed, that the court sustained the act.

What we have said above is in substantial accord with our previous opinion relating to the number of grand jurors to be summoned and the manner of their selection. We come, now, to a consideration of the remaining vital question concerning which we requested the filing of additional briefs—*i. e.,* Are the provisions of the statutes relating to the number and selection of grand jurors mandatory or directory?

It is a principle of construction that statutes must be interpreted according to the legislative intent and not always according to the letter. (*Canal Comrs.* v. *Sanitary District,* 184 Ill. 597.) The object of the legislature must be ascertained from a consideration of the entire act, its nature, its purpose and the consequences which would result in construing it one way or the other. (*Blattner* v. *Dietz,* 311 Ill. 445.) Statutory requirements intended for the guidance of officers and designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected, are not usually regarded as mandatory unless followed by words of absolute prohibition. (*French* v. *Edwards,* 86 U. S. 702, 13 Wall. 506.) Keeping these principles of construction in mind, we will now examine a number of our prior decisions to determine whether we have held other statutory requirements relating to the selection of grand jurors mandatory or directory.

It is true that in *Marsh* v. *People,* 226 Ill. 464, this court used language to the general effect that since the grand jury there chosen was not selected by the board of supervisors in the manner required by statute it was not a legal grand jury. This language was apparently quoted with approval in *People* v. *Green,* 329 Ill. 576, although it was foreign to the real issue in that case, but neither in the *Marsh case* nor in any other decision we have been able to find, has this court held in so many words that the statutory provisions for the selection of a grand jury are mandatory. The facts of the *Marsh case* clearly justified this court in holding the grand jury there selected to be an illegal body, since it was not selected at a legal meeting of the board and the supervisors were acting individually and not as public officers. But no such facts are present in the case at bar, where the names of the twenty-three persons who served on the grand jury were included in the sixty names drawn by the clerk and jury commissioners,

who were then legally constituted by statute to select grand jurors in Cook county. In the *Marsh case,* as we later held in *People* v. *Donaldson,* 255 Ill. 19, "the decision was based upon a total want of power in the county board to select a grand jury or to perform any other official act," while in the present case the clerk and jury commissioners admittedly had the requisite power to select grand jurors at the time they acted.

The strict rule announced in the *Marsh case* has been gradually modified and restricted in our subsequent decisions until it has virtually lost its original force. For example, in *People* v. *Donaldson, supra,* the court held that although the grand jury which returned the indictment was selected by the county board nineteen days before the first day of the term of court when the statute required it to be done at least twenty days before that time, this did not invalidate the indictment, as "it could make no possible difference to a defendant \* \* \* whether the grand jury was selected twenty days or ten days before the first day of court." We there held the statute to be merely directory. In *People* v. *Wallace,* 303 Ill. 504, we held that because members of the grand jury were notified by mail and not by service of summons, as required by law, this defect was not fatal to the indictment where no showing was made that the substantial rights of the accused were thereby prejudiced. In *People* v. *Walsh,* 322 Ill. 195, we held that informalities in making up a list of grand jurors did not render the indictment void where the substantial object and purposes of the statute had been accomplished with no prejudice to the accused. Likewise in *People* v. *Birger,* 329 Ill. 352, we decided that mere irregularity in impaneling or summoning grand jurors, not affecting their competency, did not vitiate their action unless the substantial rights of the accused were prejudiced by the methods pursued. These cases all indicate that by a greater weight of authority in this State the statutory provisions relating to

the selection of grand jurors have been construed as directory—not mandatory. In order to remove any further doubt on the subject, we now hold that the provisions of the Jurors act and the Jury Commissioners act, in so far as they relate to the manner of selection of grand jurors, are directory and not mandatory, unless the substantial rights of the accused are injuriously affected by the methods pursued. To the extent that the language used in *Marsh* v. *People, supra,* and *People* v. *Green, supra,* tends to express any other or different meaning those cases are hereby expressly overruled.

The further question remains whether the failure of the officers to strictly follow the directions of the statute has resulted in any loss of substantial rights or caused substantial injustice to Lieber. There is nothing in the record to show that any substantial right of Lieber was impaired by the excess number of grand jurors summoned or by the subsequent manner of their excusal from service. The twenty-three who were finally selected and sworn as the grand jury and who found the indictment against Lieber were all drawn and certified by those legally constituted to draw and certify the panel or list of grand jurors and were otherwise qualified in every way to serve as such. No prejudice or improper influence or fraud of any kind is shown in their selection or in their proceedings. Under these circumstances the principle laid down in 12 Ruling Case Law, at page 1016, seems especially applicable. There it is said: "When the provisions of the statute are merely directory, particularly when the chief purpose of the prescribed method is to distribute equally the burden of jury service, a departure from that method does not, in the absence of fraud or prejudice to the interests of the party who questions the regularity of the selection, render the grand jury illegal. The reason of this rule is that the grand jurors do not try the case but merely charge the accused. The manner of their selection is of no conse-

quence to him, he being entitled to claim only fair and impartial grand jurors who possess the necessary qualifications, whereas it is of great consequence that the administration of justice shall not be delayed by mere technical objections. Such statutes need not be followed with technical or literal strictness. A substantial compliance is all that is required, and mere irregularities in the drawing and selection do not invalidate the grand jury's action. Most of the illustrations of this rule indicate that the departure from the statutory requirements was not prejudicial to the accused. Thus the fact that the list of jurors was not certified or not certified at the exact time, that the number from which the grand jury was drawn exceeded or was less than the statutory number, * * * and similar departures from the letter of the statute, have been described not fatal."

The irregularities shown by the record here cannot be regarded as of such transcendent importance when it is considered that the grand jury itself is not a mandatory institution under the constitution of 1870 but may be abolished by the legislature at any time. If we were confronted with an indictment returned by a grand jury which consisted of less than sixteen or more than twenty-three persons then a different question of statutory construction would be before us. There we would be dealing with a grand jury, while here we are only dealing with an excessive panel or list of sixty persons out of which grand jurors to the required number of twenty-three were selected.

We think it is well settled by our own decisions and by two different sections of our statutes that a substantial compliance with the law providing for the drawing and impaneling of a grand jury is all that is required unless the record shows improper influence, undue prejudice or other matters which might have caused a true bill to be improperly returned. (*Henry* v. *People*, 198 Ill. 162.) Thus, section 9 of division 11 of the Criminal Code (Smith's

Stat. 1933, chap. 38, par. 719,) recites, in part, that "no motion in arrest of judgment, or writ of error, shall be sustained, for any matter not affecting the real merits of the offense charged in the indictment." This section has been in our statutes since 1845, but as further proof of a corresponding and more recent legislative intent we find a similar expression in section 12 of the Jury Commissioners act, added in 1931, which provides: "No objection, exception or challenge to any petit juror or grand juror or to any panel of petit or grand jurors shall be allowed at any time because of any failure to comply with the provisions of this act or of the said rules, unless the party urging the same shall show to the court that actual and substantial injustice has resulted or will result to him, because of the error or defect charged." It seems clear in this case that the points raised by writ of error are not matters affecting the real merits of the offense charged in the indictment, and further, that no actual and substantial injustice has resulted or will result to Lieber because of the errors or defects charged.

We are not by this opinion to be understood as approving the disregard of statutory provisions shown by the record in this case. That such practice has been indulged in for many years by the courts of Cook county is no excuse for its continuance contrary to the plainly expressed purpose of the legislature.

The judgment is affirmed. *Judgment affirmed.*

Mr. JUSTICE STONE, specially concurring:

I concur with the judgment entered herein and with the conclusion of the majority opinion that the statutes relating to the manner of selecting a grand jury are directory and not mandatory. I do not concur with the construction of the Jury Commissioners act adopted in the majority opinion.

It is said that to so construe the Jury Commissioners act as to permit the drawing of more than 23 names from the grand jury box in the manner followed in this case would render it unconstitutional. *People* v. *Onahan,* 170 Ill. 449, is interpreted as in effect so holding. That opinion cannot be so construed. The question there raised was whether the Jury Commissioners act contravenes section 29 of article 6 or section 22 of article 4 of the State constitution. It was directly held that it did not violate either of these sections. The attack on the constitutional ground first mentioned was based on the claim that it provided a different proceeding or practice in the courts of counties of more than 250,000 inhabitants from that obtaining in other courts of the same grade, and therefore violated the constitutional requirement of uniformity in the organization, jurisdiction, powers, proceedings and practice of courts of the same grade. It was held, however, that it did not change any of the powers, proceedings or practice of the court by the selection from the body of the county of a jury list from which a grand jury is to be drawn. Surely the provisions of section 9 of the act empowering the judge to certify the necessary number of names to be drawn and the drawing of more than 23 names of citizens from whom a grand jury is to be impaneled can no more be said to be a different practice and procedure for courts of the same grade than can the difference pointed out in the attack in the *Onahan case* and which is there held to be not a violation of the constitution. In fact, the method here used to impanel the grand jury can scarcely be said to be so radical a change as that sustained in the *Onahan case.* It was also in that case held that the act does not contravene section 22 of article 4 of our constitution, prohibiting local or special laws regulating the practice in courts of justice or summoning and impaneling grand or petit juries.

The Jury Commissioners act provides, and, as pointed out in the *Onahan case,* was intended to provide, a different

method for selecting a grand jury in counties of more than 250,000 population. It supersedes, and was intended to supersede, those sections of the Jurors act applicable only to counties with 250,000 population or less. The Jury Commissioners act does not prescribe the number to be drawn. Section 9 of that act as in force at the time this grand jury was drawn, provided that one or more of the judges certify to the clerk of the court "the number of petit jurors required each month," and that the clerk shall repair to the office of the commissioners and in the presence of persons mentioned in section 8 of the act proceed to draw by lot "the necessary number of names from those made available for such drawing as in section 8 of this act provided," and if more jurors are needed during the month a judge of the court shall so certify, and "they shall be drawn and certified forthwith in the manner above provided." It is also provided in that section: "Whenever a grand jury is required by law or by order of the court, it shall be drawn and certified in like manner." I am unable to follow the reasoning of the majority opinion that this language cannot be construed to refer to the number of prospective grand jurors to be drawn from the box, as well as to other provisions concerning the drawing. "Certified in like manner" must be construed to provide for a certificate of the presiding judge directing the clerk of the court to draw from the box kept for that purpose the number of names "required" for the purpose of impaneling a grand jury. The clerk shall, as in the case of drawing petit jurors, draw by lot "the necessary number of names." These are the provisions concerning the drawing of grand jurors. Nowhere does the act provide the number which shall be drawn, but the "necessary number" must mean a number sufficient to insure the ultimate selection of a grand jury of 23 persons. The clear intendment of the language of sections 8 and 9 of the Jury Commissioners act is, that the judge shall certify the number necessary to be drawn. Had

it been the legislative intent that but 23 should be drawn the act would have so specified, as is done in the Jurors act governing the selection of a grand jury in counties of 250,000 population or less.

The Jury Commissioners act does not purport to amend the Jurors act or any other act. It is entitled, "An act in relation to jury commissioners and authorizing judges of courts of record to appoint such jury commissioners and to make rules concerning their powers and duties." (Cahill's Stat. 1931, p. 1754.) It provides a different method of drawing and filling a panel of grand jurors from that provided in the Jurors act. They are not to be selected— they are to be drawn. If more are needed to secure a grand jury they likewise are drawn from the box. Unlike the provisions of the Jurors act, neither the county board nor the sheriff selects them or calls them from the body of the county. They are drawn from the box by lot or chance. Surely such a plan cannot be said to so readily lend itself to "hand-picking" a grand jury as under the Jurors act, where the grand jury is selected by the county board and vacancies are filled by a selection by the sheriff of such persons as he may choose. Can it be said that it was intended by the General Assembly that a system so radically different from that provided in the Jurors act shall nevertheless be controlled by that act as to the preliminary matter of determining the number to be drawn for the purpose of impaneling a grand jury? Had the General Assembly so intended it would have been a simple matter to say so, and it is but reasonable to conclude that it would have so provided. Not having so said, it is clear that it did not so intend. Our constitution contains no direction as to the number of persons to be drawn for such service or the manner in which they shall be drawn. Nor is there anything in the nature of a grand jury as known at common law which requires that the number drawn be limited to 23 persons. The common law of England as it existed

prior to the fourth year of James I, (1610,) is by statute declared to be in full force in this State where applicable, unless changed by statute. (Cahill's Stat. 1931, chap. 28, sec. 1.) At common law a grand jury, when impaneled, consisted of 23 persons, but upon the order of the court the sheriff was to return into court 24 or more persons out of the whole county out of which the grand jury were taken. Hale's Pleas of the Crown, 154.

In 1 Chitty on Criminal Law, pages 310, 311, it is said: "Upon the summons of any sessions of the peace, and in the cases of commissions of oyer and terminer and gaol delivery, there issues a precept, either in the name of the king or of two or more justices, directed to the sheriff, upon which he is to return 24 or more out of the whole county, namely, a sufficient number out of every 100, from which the grand jury is selected. Upon this precept, although it generally specifies only 24, the sheriff usually returns 48. * * * Though the number of jurymen thus returned to the court amount to 48 or more, not more than 23 are to be sworn. * * * At the sessions it is not an unusual practice, after 15 or 16 names have been called, to consider the inquest complete and not to insist upon the service of the rest who may happen to be in attendance." To the same effect are 3 Bacon's Abridgment, (ed. of 1794, p. 232); 2 Hale's P. C. 154; Lesser's History of Jury System, p. 148; Thompson & Merriam on Juries, sec. 483; *People* v. *McKay,* 18 Johns. (N. Y.) 214, 215.

In *United States* v. *Mitchell,* 136 Fed. 896, where the Circuit Court of Appeals had before it the question of the validity of a grand jury which was impaneled from a summons for 30 persons, the indictment returned by a grand jury of 23 selected from such number was sustained, and the practice of calling more than the 23 to be impaneled was approved as in the interest of expedition in the organization of the grand jury. And in *Stevenson* v. *State,* 69 Ga. 68, *People* v. *Harriot,* 3 Park. Crim.

(N. Y.) 112, *State* v. *Watson*, 104 N. C. 735, and *Low-rance* v. *State*, 4 Yerg. (Tenn.) 147, it was held that it is immaterial and does not affect the legality of the grand jury if more than 24 persons are summoned to appear as such jurors. Such practice was recognized in New England States generally. (Wharton on Crim. Law, book 1, sec. 464.) At common law a grand jury, when impaneled and composed of any number from 12 to 23, was considered a legal grand jury. (*State* v. *Symonds*, 36 Me. 128; *Norris* v. *State*, 3 Greene, (Iowa) 513; Wharton on Crim. Law, book 1, sec. 465; *People* v. *Brautigan*, 310 Ill. 472; Blackstone's Com. 302; 1 Chitty on Crim. Law, 310, 311.) It is therefore apparent that at common law it was not required that the number returned be limited to 23, but, on the contrary, the universal practice was otherwise. In a county such as Cook, with a large shifting population, it is essential to the expeditious administration of justice that the court be permitted to summon more than 23 prospective grand jurors, else it may well be that the grand jury cannot be impaneled on the first day of the term, as required by law. I am of the opinion that such was the purpose of the General Assembly in the enactment of the Jury Commissioners act. It is true that for reasons of public expense a judge should not order drawn a greater number than experience shows necessary to insure the impaneling of a grand jury without delay. The law holds no prohibition against the return of more than 23 persons from whom a grand jury is to be selected, and the method followed in this case was not for this reason contrary to the statute.

Mr. Justice DeYoung joins in this special concurrence.

Mr. Chief Justice Jones, dissenting:

I am in complete concurrence with the holding of the majority opinion that the law of this State definitely fixes the number of persons to be summoned for grand jury

service at 23 and no more. Indeed, it is impossible for me to see how anyone conversant with the legislation in this State on that subject can be of a different view. As is stated in the majority opinion, the question of the number to be summoned for grand jury service is shrouded in no doubt, and the language of the provision is so simple, so plain and so often repeated that it seems strange there should be such a want of compliance with its provisions as is shown by the record in this case. However, I am unable to agree that the plain and unambiguous language of the statute is only directory and may be disregarded at the pleasure of the judges of the criminal court of Cook county, whose duty it is to uphold the law as it exists.

Prior to 1897 there was a storm of complaint about the "hand-picking" of grand jurors in Cook county. It was then the law, as it is now, that a grand jury list should contain the names of 23 persons having specified qualifications. If any of those summoned failed to appear or were excused, the presiding judge would order the sheriff to fill the panel. This gave the sheriff a power which was frequently abused. It was publicly charged that grand juries were made to consist of men who were pre-disposed either to indict or to protect from indictment a given individual. As a result of this evil, the legislature by the enactment of the Jury Commissioners law sought to make it impossible for the grand jury to be selected, either in whole or in part, through the choice of sheriff, judge or anyone else. It was provided that a jury list be made up of all the electors in the county between the ages of twenty-one and sixty years possessing the legal qualifications for jury duty. The names of the persons on the list were required to be written upon cards and placed in a box called the "jury box." When grand jurors were needed it was the duty of the clerk of the court, in the presence of at least two of the jury commissioners, and also in the presence of the clerk of said commissioners, to draw at random from the jury

box, after it shall have been well shaken, the necessary number of names and to certify them to the sheriff to be summoned for service. If for any reason the panel was not full when it was needed the court was required to certify that fact, and a sufficient number of additional jurors to fill the panel would be drawn in the manner above stated. It was thought that this plan would entirely remove the evils which resulted from the old system. It would better protect the citizen who was not guilty of crime but whose indictment was sought for revenge or for political purposes. It would also assist in the administration of justice by giving the guilty less opportunity, through fraud and intrigue, to evade indictment. It is urged that these safeguards should now be ignored because the judges of the criminal court of Cook county have habitually violated the law with respect to the selection of grand juries for nearly forty years. Who can approve this contention? Since when did evil multiplied become a virtue? The first violation of the law was wrong, and continued violations neither remove the vice nor repeal the law. The force of the contention that the statute has been frequently violated is, that the law's inhibition against hand-picked juries does not suit the convenience or the purpose of those who have violated it. This indisputable fact is controlling of the question as to whether the law is mandatory or directory.

The majority opinion states, in substance, that this court has never held in so many words that the statute's requirements relating to the selection of a grand jury are mandatory. With this statement I disagree; but even if I am mistaken as to the import of prior decisions of this court, I am not in error in defining the line of demarcation between mandatory and directory provisions of a statute of this character. The principle is well established that if the purpose of the statute is to prevent fraud, imposition or unfounded prosecutions the law is mandatory, but if the chief purpose is only to distribute equally the burden of

jury service or to fix the time of drawing the jury or the manner of its service the law is directory. We have seen that past legislation, its purpose and its history, clearly indicate that the provision as to the number and method of selecting grand jurors is mandatory. It has not been denied that the provision for drawing names at random from the jury box is mandatory, but it is said that the provision which limits the number to be drawn to 23 is not mandatory. I cannot be persuaded by such argument. If a greater number is drawn than 23, as was done in this case, it necessarily follows that the act bestows the power upon a judge or someone else, by a process of elimination, to obtain a panel of the men of his choice. One provision is just as mandatory as the other, because the purpose of the law cannot be effectuated without a strict regard for both.

There is no well-founded rule of law which places the burden upon the defendant to show that he has been prejudiced by error. Loose language to the contrary may be found, but it has no sound basis. The true rule everywhere is, that when error against a convicted defendant appears it is presumed to have improperly affected the result. This rule was enunciated by Mr. Justice Scholfield in *Kirby* v. *People,* 123 Ill. 436, and was later approved in *People* v. *Michael,* 280 id. 11. These cited cases do not relate to the selection of a grand jury, but the rule announced must, from necessity, be universal, and both cases hold that that presumption of error is rebutted only where from the whole record it is manifest that no improper result is caused by the error. It is but a logical sequence to say that the burden of showing what the record discloses to rebut the presumption is upon the prosecution and not upon the defendant, for if the record fails to show that the error was not prejudicial the presumption is conclusive.

In order for the majority of this court to reach the conclusion it does it has found it necessary to expressly overrule two former decisions of this court, namely, *Marsh*

v. *People,* 226 Ill. 464, and *People* v. *Green,* 329 id. 576. Those who believe in the rigidity of rules of law, founded upon sound principles involving the rights of individuals, ought to advert to the splendid language used by the late Justice Farmer in *Marsh* v. *People, supra,* which deals directly with the question here involved. He said: "Cases are to be found in other States holding that a grand jury selected in a different method from that provided by law was a legal grand jury, while as many cases may be found holding that a grand jury not selected in accordance with the statute was not a legal grand jury. We believe the latter to be sounder in principle than the former line of authorities and that they are more in consonance with fundamental principles established by the decisions of our own State. It would be the adoption of a dangerous policy, and one liable to be productive of much evil, to lay down the rule that public officers may disregard the plain provisions of the statute directing them as to the manner of discharging their official duties, and hold that their acts performed in disregard of the statutory requirements would be as valid as if those requirements had been observed." In my judgment there is no occasion for the overruling of the *Marsh* and *Green cases.* The doctrine announced by them is founded upon the highest principles of justice and security. We depart from a well-marked trail when we forsake it and enter a domain of fraud, imposition and danger.

There is nothing in this case which demands the forsaking of well established principles. The excuse for doing so comes from a threat of the defendant in error that the effect of our failure to approve the strictures of the law will be to liberate certain notorious defendants who have been convicted under indictments subject to the vices we are concerned with in this case. If that should be the result it is serious and unfortunate, but the members of this court know, and the legal profession must know, where the

blame lies. This court ought not to be expected to change its rules, its doctrines and its traditions merely to excuse officials who have failed to follow the simple, plain and unambiguous terms of a mandatory statute.

FARTHING and SHAW, JJ., concur in this dissenting opinion.