(No. 14491.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs*. LEWIS WALLACE *et al.* Plaintiffs in Error.

*Opinion filed June 21, 1922.*

1. CRIMINAL LAW—*indictment for larceny need not use word "personal" in describing the property taken.* The word "personal" is not a technical or necessary word of description that is required in describing the property in an indictment for larceny, but the words "goods and chattels," when used to qualify or describe the character of the stolen property, are sufficient to designate the property as personal property and subject to larceny.

2. SAME—*summoning grand jurors by mail, if not prejudicial, is not fatal to indictment.* The fact that the members of the grand jury were notified by mail to appear before the court as grand jurors and not by service of summons, as required by law, is not fatal to the indictment, where there is no showing that the substantial rights of the defendants were thereby prejudiced.

3. SAME—*corpus delicti in larceny must be proved beyond reasonable doubt.* In a prosecution for larceny it is incumbent upon the People to prove the *corpus delicti* beyond a reasonable doubt, and such proof, under an indictment for the larceny of hogs, includes the establishment of the facts that the property alleged to have been stolen was lost to the owner by a felonious stealing, taking or driving away.

WRIT OF ERROR to the Circuit Court of Edgar county; the Hon. JOHN H. MARSHALL, Judge, presiding.

WILBER H. HICKMAN, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, GEORGE W. BRISTOW, State's Attorney, and GEORGE C. DIXON, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

An indictment was returned by the grand jury of Edgar county, at the November term, 1921, against James Wallace, Lewis Wallace and Orion Dunn, charging them with the larceny of eleven hogs, of the goods and chattels

of Jacob Littlefield, of the value of $200. The cause was continued as to James Wallace, and Lewis Wallace and Orion Dunn were tried together on a plea of not guilty, convicted, and sentenced to the penitentiary for an indeterminate term.

The main facts upon which the State secured a conviction of plaintiffs in error were testified to by Jacob Littlefield, owner of the hogs in question, and J. C. Riddell and Robert Riddell. The substance of Littlefield's testimony is the following: He lived on a farm eleven miles northeast of Paris, in said county, and a mile and a half north of Joe Keys' farm. In 1921 he raised about 300 hogs and kept them on a certain eighty acres of his farm, with his cattle. This eighty-acre tract was enclosed by a wire fence forty inches high, except about twenty rods, which was a new rail fence. In May of 1921 there were in this enclosure 122 hogs. On July 25 he shipped and sold 61 hogs, leaving in the pasture 61 hogs, which at that time were counted by him. These hogs were mixed, the majority of them being red hogs and the others white and black. They weighed about 225 pounds in July and would have weighed about 260 pounds on August 22, 1921. He never counted his hogs after July 25 until September 6, 1921, at which latter date he had only 50 hogs in the field and had not missed any of them before that date. He did not know what became of the 11 missing hogs and saw no place where they could have gotten out of the field. He testified that he did not know whether they were stolen or how they got away, and that it would not have been impossible for the hogs to have gotten out under the wire fence. He did know that none of his hogs had died on his farm.

The substance of the testimony of the two Riddells is the following: They began running a truck about July, 1921. James Wallace, indicted with the plaintiffs in error, engaged them to haul with their truck 11 hogs to Terre Haute, Indiana. J. C. Riddell, father of Robert Riddell,

resided four miles southeast of Paris. On the night of August 22, 1921, he went to the home of his son, in Paris, for the purpose of making the trip to Terre Haute the next morning. The two Riddells left Paris with their truck about midnight and drove north about five miles to a point where the road was crossed by a narrow lane running east and west, where they met James Wallace, who opened the gate for them leading into a field of Joe Keys. From this gate they drove straight east through the field about three-quarters of a mile to a fence on Keys' farm, where they were met by plaintiffs in error, who were attending 11 hogs enclosed in a temporary wired pen. James Wallace rode with the Riddells on the running-board of the car from the point where they met him to the place where the hogs were penned. The 11 hogs were loaded into the truck and hauled to Terre Haute by the Riddells and sold to the Home Packing Company for $238. The check for the hogs was made payable to J. C. Riddell, who cashed it, and he testified that he later turned the money over to James Wallace on Main street, in Paris, near the Union station, about two o'clock in the afternoon of August 23, 1921, after deducting $35 for hauling the hogs to Terre Haute. The Riddells left with the hogs about two o'clock in the morning of August 23. Robert Riddell, James Wallace and the plaintiffs in error loaded the hogs on the truck by placing a door, or some structure of like character, upon the rear end of the truck and driving the hogs over it into the truck while J. C. Riddell stood at the side and kept the hogs from going through the fence. J. C. Riddell testified that he did not know what kind of hogs were loaded and did not know their weight or color and did not know whose hogs they were. Robert Riddell testified that the 11 hogs were red and black, the greater number of them being red, and that they weighed about 255 pounds each, and that all of the hogs were either red or black and that there were no mixed colors among them. Also that James Wallace said to him,

in the presence of plaintiffs in error, that he did not want to go to Terre Haute himself on account of his brother, Lewis, having gotten into a cutting scrape in Terre Haute, and asked the witness and his father if they would take the hogs to Terre Haute. He inquired of them what time they would get back to Paris from Terre Haute, and on being informed that they would get back that afternoon and that they would take the hogs to Terre Haute and sell them, he asked them to meet him in Paris on their return. It further appears from the evidence that Robert Riddell was a deputy sheriff and testified before the grand jury against the plaintiffs in error. He testified on rebuttal that on the night of November 16, 1921, (the day the plaintiffs in error were arrested and on which the witness appeared before the grand jury,) the plaintiffs in error came to his home, and that Lewis Wallace said to him, "We are in a hell of a fix," and that witness replied, "Yes; it looks like it." He stated that they then asked him if he testified before the grand jury that he had hauled hogs out of Keys' farm, and he told them that he had; that they then said, "Why the hell didn't you deny hauling hogs?" and he told them that he was on oath and was supposed to tell the truth. He also stated that they then told him that he had better leave the State, and that Lewis Wallace turned to Jim Wallace, who was also with the plaintiffs in error, and said that they had better see witness to-morrow, but that he did not see them.

Homer Hill, who was not very well acquainted with the Wallace brothers, testified that he saw them in Paris about the 20th or 23d of August, 1921, behind the *Beacon* office, in which he worked, and that one or the other of them,— he did not know which,—had a large roll of money in his hand.

Lewis Wallace and Orion Dunn testified on their own behalf and denied *in toto* the testimony of the Riddells in regard to their hiring or having anything to do with hiring

them to haul hogs to Terre Haute or having helped to load the hogs, and testified positively that they had nothing to do with the hogs and knew nothing about their having been stolen from Littlefield. They further testified that they left Paris together for Terre Haute on the three o'clock car on the afternoon of August 22, 1921, and arrived at Terre · Haute about four o'clock that afternoon; that they walked around town until supper time, and after supper they attended a dance at Gable's dance hall until twelve o'clock that night; that they then played a gambling game called "chicklet" with several others in a room adjoining the dance hall until about three o'clock in the morning, and from there went to a house of ill-fame, where they remained until about nine o'clock the next morning. They further testified that they returned from Terre Haute to Paris about one o'clock in the afternoon of August 23, where they met James Wallace and accompanied him in his car to Martinsville, Illinois, to the county fair grounds, where they had some race horses for the fair. They gave as a reason for being able to fix said dates the fact that the Martinsville fair began on Wednesday, August 24, 1921. They were corroborated in their testimony by Jacob Gable, the proprietor of the dance hall in Terre Haute, who testified that he saw them there from eight o'clock P. M. until twelve o'clock of August 22; also by Bruce Walsh, who handled and trained horses for the Wallaces, and who testified that he was in Terre Haute on the evening of August 22, 1921, and saw plaintiffs in error there. They were further corroborated by Fred Edwards, Lewis Wallace's brother-in-law, who testified that he was in Terre Haute on the evening of August 22 and saw plaintiffs in error there at that time. Three other witnesses testified that it would be almost impossible to drive a Ford truck across the field from the road to the place the Riddells claimed to have loaded the hogs. Joe Keys, the owner of the land over which the truck is claimed to have been driven and upon whose land it is claimed the

hogs were loaded, testified that he was over his farm every day during August, 1921, looking after sheep, and that he did not at any time see a hog-chute or any hogs on his land, and did not see any tracks at the gate or across the field where the truck is alleged to have been driven. Plaintiffs in error also deny the testimony of Robert Riddell as to what took place at his house on the night of November 16, 1921, and in which he stated that they asked him or suggested to him that he leave the State, etc. They testified that they were at his house on or about that time but that they were there trying to sell him butchered meat for his butcher shop in Paris, and that no mention was made of the charge against the plaintiffs in error at that time.

The first error assigned by plaintiffs in error is that the indictment should have been quashed because it did not contain in the allegation of ownership of the hogs the word "personal," the allegation being that the hogs were "of the goods and chattels of Jacob Littlefield," instead of alleging that they were "of the personal goods and chattels of Jacob Littlefield." The word "personal" is not a technical or necessary word of description that is required in the description of property stolen. The words "goods and chattels," when used to qualify or describe the character of property stolen, are sufficient to designate the property as personal property and subject to larceny. It is well known to laymen, as well as to lawyers, that hogs are personal property, and when they are further described as "goods and chattels" of another, all doubt is dispelled as to the nature of the charge in the indictment being the stealing of hogs,—a very common and well known species of live stock. The omission of the word "personal" did not render the indictment fatally defective, and the motions to quash and to arrest the judgment for such omission were properly overruled by the court. 25 Cyc. sec. 3, p. 75; *State* v. *Parker,* 36 Am. Rep. 5.

The indictment is also attacked upon the ground that the members of the grand jury were notified by mail to appear before the court as grand jurors and not by service of summons, as required by law. There is no evidence whatever to show, and there was no attempt to show, that the substantial rights of the plaintiffs in error were prejudiced by this method of summoning grand jurors, and without such a showing it was not error to require them to go to trial upon the indictment returned by such grand jurors.

It was incumbent upon the People in this case to prove the *corpus delicti* beyond a reasonable doubt. This rule is well established in criminal cases and requires no citation of authority to support it. The *corpus delicti* in this case consisted of two elements: (1) The establishment of the fact that the hogs in question were lost to the owner, Jacob Littlefield; and (2) that they were lost to him by a felonious stealing, taking and driving away. Both of these elements or facts must be established beyond a reasonable doubt before the conviction of plaintiffs in error can be sustained. We have stated substantially all of the evidence in the record, and while the testimony of the People's witnesses is a very remarkable story, casting strong suspicion upon the plaintiffs in error and others, yet it does not satisfactorily prove the *corpus delicti*. This is so because there is not a single witness that undertakes to testify that the hogs in question were the hogs of Littlefield, and the few circumstances testified to by the witnesses are not sufficiently certain and definite to supply the evidence which the witnesses could not furnish from their own knowledge. The hogs that Littlefield lost were not definitely described. All that the record shows is,—and that by inference,—that they were red or black or white or mixed-colored, or that some were red and some black and some white and some mixed-colored. The record furnishes no other mark upon Littlefield's hogs by which they might be identified as the 11 hogs testified about by the Riddells. The best that the record re-

veals is that Littlefield's hogs were about the same size as the 11 hogs taken from Keys' field and of about the same weight, and that they might possibly be of the same color as the hogs lost by Littlefield. For the same reason it can not be said that the defendants were proven guilty, beyond a reasonable doubt, of stealing 11 hogs from Littlefield, as charged in the indictment, although they were probably of the same size and the same in number as those hauled by the Riddells and sold in Terre Haute.

We think that a proper regard for the legal rights of the plaintiffs in error demands a reversal of the judgment in this case. The judgment is accordingly reversed and the cause remanded for a further trial.

*Reversed and remanded.*