(No. 32028.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BRUCE QUINN *et al.,* Plaintiffs in Error.

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

O. DAYTON ARNOLD, and MINTON W. ARNOLD, both of Rushville, for plaintiffs in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and ERNEST G. UTTER, State's Attorney, of Rushville, (ERNEST HARPER UTTER, C. G. COLBURN, and HARRY L. PATE, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The plaintiffs in error, hereinafter referred to as defendants, Bruce Quinn, age 24, Nile Beaver, age 26, and Oren Hill, age 58, were arrested on April 29, 1950, upon the complaint of Clay Fowler, who had accused defendants of stealing nineteen bushels and forty-five pounds of soybeans valued at $49.10 from the granary on the Clay Fowler farm. This farm has been occupied by defendant Oren Hill under an oral agreement from the year 1946 up to the date of his arrest. The defendants were tried jointly before the court without a jury in the Schuyler County circuit court, a waiver of trial by jury by the defendants having been signed on November 8, 1950. After the court had entered a finding of guilty as to all of the defendants, they each made application for probation. Oren Hill's petition for probation was allowed, and those of Nile Beaver and Bruce Quinn were denied. The defendants were then denied the right to file motions for new trial. The defendants' motion in the nature of writ of error *coram nobis* was overruled. Nile Beaver was then sentenced to two to six years' imprisonment in the State Reformatory for Women at Dwight, Illinois, and Bruce Quinn was sentenced to three to eight years in the Illinois State Penitentiary.

The defendants seeking reversal of the judgment entered against them have assigned many errors, but the one

of controlling importance, in our opinion, is the failure of the State to introduce evidence proving defendants' guilt beyond reasonable doubt. Consequently, it is advisable for this opinion to disclose rather fully many of the pertinent facts upon which the prosecution justifies their conviction.

Oren Hill was a bachelor farmer owning two teams of horses and all the horsedrawn machinery and wagons necessary for the planting and cultivating of corn, oats, rye and beans. He did not possess any motorized equipment. The landowner, Clay Fowler, had 120 acres of land, 70 acres of which was in cultivation. The tillable areas were in small tracts of irregular shapes of three, seven and ten acres where horsedrawn plows, cultivators and drills were more practical. Their farm lease was an oral arrangement. There seems to be no disagreement as to the provisions of that lease in 1946, the beginning of the tenancy. Hill was to prepare the soil for planting of the seed, perform all farm labor in connection with the drilling, cultivation and harvesting of the crops. Each was to pay for one half of the seed, but the landlord was to have a controlling voice in the matter of what crops should be planted on each tract each year. Each was to have one half of the small grain, which was to be stored in the granary located on the premises and later divided. Each was to pay one half of the cost of combining. Hill was to keep up the repairs on the fences and to build and put in fence posts, and all this was supposedly for his pasture rent. The evidence further shows that Hill was registered as a tenant on the premises of Fowler under the provisions of the Federal farm program for the year 1946, and Fowler was registered as the landlord.

According to the testimony of Hill, the same rental agreement continued in force throughout the succeeding years of 1947, 1948 and 1949. During this period Hill sold corn, beans, oats and rye to the neighbors and elevators.

It was his custom to sell it in small amounts that he might have some cash to purchase the simple necessities of a bachelor living alone in a rural community.

Fowler, on the trial, denied that Hill was his tenant, but stated that in consideration of his farm labor, Hill was to have feed and pasture for his four horses, the use of a milk cow and the occupation of the farm dwelling, barns and sheds. To illustrate the vagueness of the tenancy agreement as interpreted by Fowler, let us recite the following questions and answers:

"Q. So that in the year 1949 while Oren Hill was living on your place, under an agreement you have heretofore testified about, there was actually planted on that place corn, oats, beans and rye, isn't that true?

"A. That is right.

"Q. He planted oats and beans, corn and rye there each year didn't he?

"A. Not for himself he planted it for me, help me plant it.

"Q. He was there under the agreement about which you have heretofore testified, he was there as your tenant?

"A. He is not my tenant in general. I didn't have the farm rented only a few pieces of land I would allow him to have because there was more than I wanted to farm— I let him farm part of it.

"Q. You mean he put the rest of the grain in there and got nothing for his work?

"A. He helped me put in grain and got no money only he owed me the work by living on the place.

"Q. Who determined what he owed you?

"A. I did and he agreed.

"Q. You did that for four straight years, did you?

"A. I did that—where I allowed him a portion of the land—I'll say this, that he had no authority of his own but he did take a little now and then and I didn't do anything about it.

"Q. You were testifying that he got half of what you let him have and nothing for all the rest, is that right?

"A. That is right."

Mr. Fowler admitted that Hill had planted the field from which the beans, the subject of the larceny herein, were harvested. He admitted that Hill hauled with his team and wagon those beans to the granary.

Of contrary and more positive character than the foregoing vagulous account is the testimony of Oren Hill. He testified that he planted all the crops in the year 1949, and that he continued as Fowler's tenant throughout the years of 1946, 1947, 1948 and 1949 according to the same arrangement entered into in 1946; that he planted, in all, eleven or twelve acres of beans, seven acres in one tract and three acres in another, and a one-acre tract; that he himself had plowed, harrowed and disked those tracts; that Jim Fowler, the landlord's brother, combined the beans; and that he followed the combine with his team and wagon, hauled the beans to the granary and scooped them into the bin. Hill further testified that some time in January, 1950, Fowler came to the farm with a tractor and rubber-tired wagon and hauled away his half of the beans; that he and Fowler measured the beans, leveling them off in the bin against the cracks in the boards. Mrs. Nile Beaver, one of the defendants, in her testimony corroborated Hill as to these facts.

Mrs. Beaver had been known to Oren Hill since childhood. At the age of fifteen she was married to Jesse Beaver, and at the age of twenty she was the mother of four children. There was a close personal relationship between Oren Hill and Nile. She called him uncle, and he treated her much as if she were his child. During the year prior to the events that led to the present difficulty, Mrs. Beaver was on the farm with Hill much of the time. She and her husband were separated intermittently and divorce was contemplated. During this period she and Oren

raised hogs and sold them and managed to make a down payment on a car, and, frequently, they would drive to the elevator in Rushville and sell oats and beans in four- and five-bushel lots, thus providing food for the table and some cash to take care of their meager wants. Without any question, Fowler knew of these facts. Oren Hill also took care of the hogs and cattle for Fowler, in addition to his other farm labor. Fowler admitted that Hill did such a good job in this department that he gave him $50 as a gratuity. Hill, however, could not remember this fact. During the period of time that Nile became estranged from her husband, she developed a friendship for Bruce Quinn, the remaining defendant, who was finding it difficult to live in harmony with his wife. They were divorced early in 1950. Bruce and Nile spent much time together on the farm with Oren, and the State, over the objection of counsel for defendants, was allowed to develop circumstances that indicated that the relationship between those two was somewhat clandestine. In April, 1950, Mrs. Beaver borrowed Bruce Quinn's car to make a trip to Virginia, Illinois, and on the way home she was crowded off the road by a transport truck, resulting in considerable damage to Bruce's car. There was a $50-deductible collision policy of insurance on this car, so Nile came to Oren Hill in quest of the $50 and asked for financial help. He told her he did not have any cash but that she and Bruce could have enough beans to pay and take care of that item. Bruce was a trucker. Hill help load the beans in Bruce's truck at 3:00 P.M., April 19, 1950. Paul Cox, at the elevator at Rushville, told Quinn and Nile that the elevator would not buy hay beans, but that a seed store would be interested in their purchase. They drove the truck of beans in broad daylight past the landlord's home to the Weiseman Seed Store at Bath, where the beans were sold. Quinn took the check in his name in the amount of $49.50. They explained that they did this so that they would not have to

go back to the farm to get Oren's endorsement on the check. They gave the scale tickets containing the weight of the beans and their price to Oren Hill on their next visit to the farm.

The three defendants were arrested on April 29, 1950, charged with the theft of the beans sold on April 19, 1950. Bruce Quinn made bond in 24 hours, Mrs. Beaver remained in jail for one month, and Oren Hill was in jail just nine days short of four months.

The evidence clearly shows that Oren Hill was a very industrious and dependable farmer; that he exchanged work with his neighbor farmers and his relationship with them was always cordial and pleasant; that he seldom left the farm; and that his honesty and reliability were never questioned by the landlord prior to the occasion of his arrest. Exclusive of the innuendoes of immorality, there is nothing in the record that would indicate that the other two defendants did not enjoy a good reputation in their community.

It was incumbent upon the State to prove beyond a reasonable doubt that Clay Fowler was the owner of the beans that were lost to him, and that they were lost to him by a felonious stealing, taking and hauling away. These elements must be proved beyond a reasonable doubt, else a conviction cannot be sustained. (*People* v. *Wallace,* 303 Ill. 504, 135 N.E. 723.) The burden is upon the State to prove beyond a reasonable doubt that Clay Fowler, alone, owned the beans in question to sustain the charge of ownership in him as alleged in the indictment. (*Aldrich* v. *People,* 225 Ill. 610, 80 N.E. 320.) The allegation of ownership is a material allegation which must be proved beyond a reasonable doubt and the taking must be with felonious intent, and such felonious intent must be proved beyond a reasonable doubt. *People* v. *Geister,* 289 Ill. 249, 124 N.E. 530; *People* v. *Pastel,* 306 Ill. 555, 138 N.E. 194; *People* v. *Walinsky,* 300 Ill. 92, 132 N.E. 757.

Applying the foregoing principles of law, we are forced to the conclusion that the State has failed to prove beyond all reasonable doubt the guilt of any of the defendants.

The transcript in this case contains 340 pages. We have detailed only a few of the salient and pertinent facts. A careful reading of the record leads us to but one conclusion, namely, that the proof is most unconvincing that Clay Fowler was the sole owner of the beans in question. If this were a trial of the rights of property between Oren Hill and Fowler as to the ownership of the beans, it would be our opinion that Fowler had not established himself as the sole owner, *a fortiori* is that conclusion inescapable in a criminal case.

It is inconceivable that a felonious intent could be ascribed to Nile Beaver or Bruce Quinn. The beans in question were in a granary on a farm in Hill's possession, where he had all the appearances of a tenant operating the farm on shares. It was by his labor and the use of his horses and farm implements that these beans were planted and harvested. It was his team and wagon that hauled them into the barn. For a period of months, Nile Beaver had seen him take small quantities of grain from the granary and sell the same. Never was there any question about his right to do so. Mrs. Beaver had no way of knowing or even suspecting that the beans she sold were the property of Clay Fowler. The record is barren of any proof that Nile Beaver, with a felonious intent, did steal, carry away and sell the beans in question. Bruce Quinn was likewise innocent of any felonious intent.

The court is not unmindful of the rule of law which recognizes the superior position of a trial court in ascertaining the truth and appraising the credibility of witnesses. There are many errors claimed by defendants which have considerable merit but the view we entertain makes it unnecessary to consider them. We are of the opinion that the finding of guilty is not supported by the evidence.

*Judgment reversed.*