(Nos. 32351, 32352, 32353, 32354, 32355, 32356.—

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error, *vs.* WILLIAM F. GIBBS, Defendant in Error.

*Opinion filed September 17, 1952—Rehearing denied Nov. 17, 1952.*

IVAN A. ELLIOTT, Attorney General, and GEORGE P. COUTRAKON, State's Attorney, both of Springfield, (ROBERT B. OXTOBY, of Springfield, and HARRY L. PATE, of Tuscola, of counsel,) for the People.

A. M. FITZGERALD, of Springfield, for defendant in error.

Mr. JUSTICE FULTON delivered the opinion of the court:

Six indictments were returned by the grand jury of Sangamon County against the defendant in error, William F. Gibbs, on December 13, 1950. All were ordered filed by the circuit court of that county on the same date and a *capias* was issued in each case. On January 15, 1951, motions to quash were filed in all cases on behalf of defendant in error and on May 3, 1951, on motion of the State's Attorney, these motions to quash were set for hearing on June 28, 1951. The motions to quash were argued on the date scheduled and taken under advisement by the court. On September 7, 1951, before the court had ruled on the motions, defendant in error filed a petition for change of venue from two of the judges of the seventh judicial circuit on the ground of prejudice, one of the judges being the judge who had the motions under advisement. The petition for a change of venue was allowed on September 26, 1951. On October 9, 1951, another of the judges of the same circuit set the motions to quash for argument on November 7. The motions were argued on November 14 and on December 12, before any ruling had been made, the defendant sought and obtained leave to file additional grounds in support of his motions to quash, and these additional grounds, five in number, were filed on the same date. On December 19, 1951, the court entered its orders quashing all indictments. This writ of error is brought by the People by virtue of section 17 of division XIII of the Criminal Code (Ill. Rev. Stat. 1951, chap. 38, par. 747,)

to review the orders of the trial court. Since the same questions of law are presented in all cases, the causes have been consolidated by order of this court.

The indictments in all cases but one contained nine counts charging grand larceny, forgery and confidence game and their cognates. The sixth indictment contained four counts all charging forgery. Each indictment charges that the various offenses were committed by the defendant in error on a certain date with respect to a particular Auditor's warrant of the State of Illinois. The indictments differ from one another only as to the date of the alleged offenses and as to the particular warrant involved, each warrant being different in amount and as to name of payee. All counts in any one indictment are based on one particular warrant and the date of the alleged offense is the same in each count.

As to the five nine-count indictments, count 1 charges larceny of the warrant in question, count 2 charges larceny as bailee and count 3 larceny as bailee, particularizing in greater detail. Count 4 charges defendant in error with forging the name of the payee as an endorsement and count 5 charge the uttering of a forged instrument, *i.e.,* an instrument with a forged endorsement. Count 6 is the same as count 4 except that the payee is alleged to be a fictitious person and count 7 charges the uttering of the warrant with the false endorsement of a fictitious payee. Counts 8 and 9 are the confidence game counts, the former charging the obtaining of the warrant in question by means and use of the confidence game, and the latter an attempt to do so. The sixth indictment contains only four counts, all charging forging and uttering, and being like counts 4, 5, 6, and 7 of the other indictments.

The original motions to quash contain twenty specifications of objection to each of the nine-count indictments and ten as to the four-count indictment. All items in the original motions to quash relate to matters appearing on

the faces of the indictments. Such is not the case with the additions to the motions to quash. Each of these contains five specifications of objection and all relate to the legality of the grand jury which returned the indictments and thus raise questions *dehors* the indictments themselves. This involved the taking of certain testimony which appears in the record. The first of these allegations, incorporated in the motions to quash as item 21 in all cases, alleges that the grand jury was recalled improperly and not in pursuance of the provisions of section 3 of division XI of the Criminal Code. (Ill. Rev. Stat. 1949, chap. 38, par. 713.) The second contention (item 22) is that the grand jury was improperly called in the first place and no order of recall issued recalling it for the day the indictments were returned. Item 23 of the additional grounds alleges that no proper list of the grand jurors was filed with the clerk of the circuit court and also that no order reconvening the grand jury was entered. Item 24 alleges that the grand jury was not properly assembled on November 22, 1950, that is, that it was not a legal grand jury in the first instance. Item 25 again refers to the filing of a list of grand jurors and says no proper list was filed for the January, A.D. 1951, term.

It appears from the record that the trial court recognized items 21 and 22 of the additional grounds as a sole basis for quashing all of the indictments, *i.e.,* the proposition that the grand jury was not properly recalled. This was the only reason given or discussed by the trial judge, who said: "When a Grand Jury is excused from further service by the Court, in my judgment the only way that Grand Jury can be recalled is by a proper order of the Court designating the time at which the Grand Jury is to reassemble. It appearing to the Court that in this particular series of indictments there was no order entered by the Court for the recall of this Grand Jury, it will be the order

that each indictment pertaining to defendant Gibbs be quashed."

But the reason given by the court below for quashing the indictments is not seriously urged in this court by counsel for defendant in error as a basis for sustaining the order of the trial court. In his argument counsel for defendant in error states that items 21, 22 and 24 of his motions properly deal with those matters which might be considered as merely directory and he fails seriously to argue the contentions that the grand jury was improperly called in the first place or that it was improperly recalled. He does, however, argue that objection 23 contains sufficient reason for invalidating the indictments, that is, that no proper list of grand jurors was filed with the clerk of the circuit court. However, since the trial judge quashed the indictments for the reasons given and since those grounds are among those specified in the motions to quash, we shall deal here with all matters raised in the additional grounds filed in support of the motions.

The proof in the record relative to the grand jury shows that the regular November term of the circuit court of Sangamon County began on Monday, November 6, 1950. On October 30, 1950, during the September term, an order was entered by the court that the grand jury be summoned to appear before the court for service on November 20, 1950, at 9:30 o'clock A.M. and that the clerk include in the summons the names of the regular panel with five names from the supplemental panel. The record further shows that the grand jury for the November term was duly empanelled on November 20, 1950, a foreman was appointed and the jurors including the foreman were sworn and were charged touching their duties, retiring in charge of a sworn officer. On November 22, 1950, the grand jury was discharged subject to recall. On December 13, 1950, the grand jury reconvened and returned the true bills

that are in question here. Thus it appears that the November term grand jury convened, not on the first day of the term which was the first Monday in November, but rather on November 20, 1950. It further appears that after the grand jury was discharged subject to recall on November 22, 1950, no order for its recall was entered of record. The record shows merely that it reconvened on December 13, 1950, one of the days of the November term. Section 9 of the Jurors Act (Ill. Rev. Stat. 1949, chap. 78, par. 9,) provides for the summoning and selection of the grand jury where required by law. The provisions of this section, so far as pertinent to the questions now before us, are as follows:

"If a grand jury is required by law or by the order of the judge for any court, the County Board in each of the counties in this State wherein such court is directed to be held, at least twenty (20) days before the time of appearance specified in the summons hereinafter mentioned shall select twenty-three (23) persons, regardless of sex, possessing the qualifications provided in Section 2, of this Act, and as near as may be a proportionate number from each town or precinct in their respective counties, to serve as grand jurors; * * * and cause their clerk within five days thereafter to certify the two panels properly identified as the regular panel and supplemental panel, respectively, to the clerk of the court for which they are selected, who shall issue and deliver to the sheriff of the county wherein the court is to be held, at least ten (10) days before the time of appearance hereinafter mentioned a summons commanding him to summon the twenty-three (23) persons so selected for the regular panel to appear before such court at or before the hour of eleven o'clock A.M. upon the first day of the term, or upon such day as the court or judge shall direct, to constitute a grand jury in courts having terms fixed by law for the term for which they are summoned, * * *. In those courts having terms fixed by law the court may in its discretion enter an order at least

ten (10) days before the first day of the term for which the grand jury is selected dispensing with the grand jury on the first day of the term; and shall, on any date during the term for which the grand jury has been selected, enter an order causing a summons to be issued by the clerk of the court and issued to the sheriff of the county wherein the court is to be held at least ten (10) days before the time of appearance called for in said summons commanding him to summon the regular panel together with such number of the supplemental panel as the court may direct to appear and to constitute a grand jury as hereinabove set forth."

Examining the record in the light of the statute just quoted it is apparent that the grand jury did not appear on the first day of the term as the statute indicates it should. It is equally apparent that no order dispensing with the grand jury was entered at least ten days before the first day of the term. If the order of October 30 is to be considered as such, it was late by about three days. The statute further provides that if the grand jury has been dispensed with the court may enter an order on any day during the term for which the grand jury has been selected causing a summons to be issued at least ten days before the time of its appearance calling the grand jury into session, but the order in question was not issued on a day during the term,—it was entered seven days prior to the term. Thus we have a departure from the provisions of the statute so far as the summoning of the grand jury is concerned. The question now before us is whether this departure was so serious that its effect was to vitiate the indictments in question.

The fact that the order of October 30 did not formally recite that the appearance of the grand jury on the first day of the November term was being dispensed with we regard as unimportant since its intended effect in that regard could not be mistaken. We then have the questions: (1) What

is the effect of the failure to enter the order at least ten days prior to the first day of the term if it was to operate to dispense with the grand jury's reporting on the first day of the term? (2) What was the effect of its not being entered on a day during the term if it was to operate to convene a grand jury that had been dispensed with?

This court has from time to time considered what effect departure from the statutory provisions as to the selection of grand juries has had on indictments returned by them. In *People* v. *Lieber,* 357 Ill. 423, we held that the drawing of the names of more than twenty-three persons and certifying them to the sheriff for service as grand jurors and subsequently drawing by lot the required number for jury service would not invalidate an indictment returned by a grand jury where the jurors were qualified to do so and where no prejudice, improper influence or fraud appeared. In that case after analyzing a number of our prior decisions we said: "These cases all indicate that by a greater weight of authority in this State the statutory provisions relating to the selection of grand jurors have been construed as directory—not mandatory. In order to remove any further doubt on the subject, we now hold that the provisions of the Jurors Act and the Jury Commissioners Act, insofar as they relate to the manner of selection of grand jurors, are directory and not mandatory, unless the substantial rights of the accused are injuriously affected by the methods, pursued." Among the cases referred to in the *Lieber case* are our decisions in *People* v. *Wallace,* 303 Ill. 504, *People* v. *Walsh,* 322 Ill. 195, *People* v. *Birger,* 329 Ill. 352, and *People* v. *Donaldson,* 255 Ill. 19.

An examination of section 9 of the Jurors Act indicates that its primary purpose is to get the grand jury into court. Once the proper result has been achieved, it matters little when or how the grand jurors were summoned or ordered to appear unless, of course, it can be said that the substantial rights of a defendant have been seriously prejudiced

by the manner of securing that result. Courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context, and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy. (*Securities and Exchange Com.* v. *Joiner Leasing Corp.* 320 U.S. 350.) The object of the legislature must be ascertained from a consideration of the entire act. (*Blattner* v. *Dietz,* 311 Ill. 445.) Statutory requirements intended for the guidance of officers and designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of the parties interested cannot be injuriously affected, are not usually regarded as mandatory unless followed by words of absolute prohibition. *French* v. *Edwards,* 80 U.S. 702.

The provisions of the act in question are primarily intended for the guidance of the officers of the court in securing the attendance of the grand jury. The grand jury has already been selected. It awaits only the call to serve. When by a single order its regular arrival date is dispensed with and another date set, it is difficult to see that any one but the officers of the court are affected even though irregularities as to time may exist.

In the recent case of *People* v. *Potts,* 403 Ill. 398, the venire was issued by the clerk on May 12 returnable on May 19, contrary to the requirement that there be a ten-day lapse between the issuance of the venire and the appearance of the grand jury. The venire was not signed. We sustained the indictments challenged, saying: "A statute specifying the time within which a public officer is to perform an official act regarding the rights and duties of others will be regarded as directory, merely, unless the nature of the act to be performed or the language used shows that the designation of time was intended as a limitation on the power of the officer." In the same opinion we stated that the fact that the grand jury appeared in

court, and was empanelled and sworn, amounted to a ratification of the previous summoning and appearance. We also pointed out that no showing had been made that the defendant had been prejudiced by the irregularities complained of. No showing has been made, nor is it seriously contended, that the substantial rights of the defendant in the case now before us were prejudiced by the departure from the time and method indicated by statute for summoning the grand jury. The record shows that the grand jury, regularly selected for the November term, did appear in court and that it was properly instructed, empanelled and sworn. The indictments are valid notwithstanding the fact that there were irregularities as indicated in the time and manner of summoning the grand jury.

What as to the fact that no order recalling the grand jury appears of record? As previously indicated, there is nothing in the record to show that the grand jury excused subject to recall on November 22 was formally recalled for December 13, the date on which it convened. The record shows only that the grand jury appeared on the date last mentioned. Much that has already been said applies to this question as well. Section 3 of division XI of the Criminal Code (Ill. Rev. Stat. 1949, chap. 38, par. 713,) provides: "If they are dismissed by the court, they may be summoned again at such times as the court may direct during the period by law in which they constitute the grand jury." Sangamon County is part of the seventh judicial circuit. The November term of the circuit court of Sangamon County begins on the first Monday in November in each year and extends to the first Monday in January. (Ill. Rev. Stat. 1949, chap. 37, par. 71.11.) The grand jury's "present service" continues throughout the term. (*People* v. *Cochrane*, 307 Ill. 126; *People* v. *Brautigan*, 310 Ill. 472.) There can be no dispute that the regular grand jury for the November term did appear on December 13, which was

within the term for which it constituted the grand jury and voted the indictments in question.

The purpose of section 3 of division XI of the Criminal Code is to secure the attendance of the grand jury— to get an existing grand jury back into court. Upon recall of the grand jury no reorganization is required. The grand jury in this case had become a constituent part of the November, 1950, term of the court and would cease to be such only upon the expiration of the term and not on being excused subject to being recalled. Grand jurors recalled need not be resworn. (*People* v. *McCauley*, 256 Ill. 504; *People* v. *Vincent*, 394 Ill. 165.) The fact that the record shows that the regularly constituted grand jury did appear fulfills, we believe, the essential requirements of the law. We do not believe that the presence in the record of an order of recall is jurisdictional. The statute itself does not prescribe it. If the legislature had intended such a requirement it would have said so. By way of contrast we have the legislative provision for the summoning of a special grand jury which provides: "The judge of any court of record of competent jurisdiction may order a special venire to be issued for a grand jury at any time when he shall be of opinion that public justice requires it. The order for such venire shall be entered on the records of the court by the clerk thereof." Ill. Rev. Stat. 1949, chap. 78, par. 19.

By section 3 of division XI of the Criminal Code we believe that the legislature was doing no more than suggesting a *modus operandi*, a guide to the proper officers, to secure system, order and dispatch. If the result contemplated by the statute has been achieved without prejudice to the substantial rights of the defendant, no one has been injured. (*People* v. *Potts*, 403 Ill. 398.) The right of the regularly constituted grand jury to reconvene cannot be said to be dependent upon an order. It is the regu-

larly constituted grand jury for the term for which it was selected and if during the term it does reconvene and performs acts within its legal and constitutional powers the legal efficacy of those acts cannot be challenged on the sole ground that there is no order of record telling an officer to summon the grand jury. We believe that the indictments in question were valid and were regularly returned though no order appears of record recalling the grand jury.

As previously indicated, the matters heretofore discussed, though considered controlling by the trial court, have not been seriously argued by defendant in error here. We now come to the matter relative to the grand jury which counsel for defendant in error earnestly presents in this court—the contention that no proper list of grand jurors was filed with the clerk of the circuit court prior to the November, 1950, term. In his argument counsel concedes that matters of statutory requirement heretofore dealt with in this opinion may properly be considered as directory only. But he urges that the requirements relative to the certification and filing of a proper list of grand jurors are mandatory.

Counsel for defendant in error, in support of the additional grounds in the motions to quash, introduced certain proof. As already suggested these additional grounds were matters concerning the grand jury and thus did not relate to questions appearing on the faces of the indictments. It was incumbent upon defendant in error, in challenging the legality of the grand jury, to support his contentions with proper proof. To do this he called a deputy clerk of the circuit court of Sangamon County and requested the production of certain records, among them the orders of the court relating to the November grand jury. These, defendant in error introduced in evidence as exhibits on his behalf.

Defendant in error bases his entire argument on the fact that the deputy clerk, who testified, stated that the exhibits produced at the request of the defendant in error

comprised all the "orders" regarding the November, 1950, term grand jury and upon cross-examination stated that the exhibits were a complete record and were "all the records in the circuit clerk's office regarding the November, 1950, term grand jury." The argument is that since no list of grand jurors is found among these exhibits and since the deputy clerk stated that these were all the records regarding the November grand jury, therefore, there must have been no jury list, and, therefore, no legal grand jury.

The witness testifying was a witness called by defendant in error in support of the allegations contained in his motions to quash, one of which was that there was no legal grand jury list. The record shows that no question was ever asked by counsel for defendant in error as to whether or not there was in the possession of the circuit clerk a list of grand jurors or a certification by the clerk of the board of supervisors of the list of jurors selected for the term. Though counsel requested the production of orders relative to the grand jury he did not request the production of the certified list. He bases his entire argument on the idea that since the clerk did not voluntarily produce such a list nor refer to it when questioned as to whether the records produced were all the records relative, we must assume there was no list or certification.

We cannot agree with this line of argument. In challenging the indictments for the reasons alleged, it was incumbent on defendant in error by proof positive to demonstrate that what he contends were mandatory requirements of the law were not complied with. He cannot be allowed, by avoiding any direct reference to a jury list in the court below, to contend here that there was none. If counsel intended to support his contention under item 23 of his motion, it was necessary that he make a proper record by direct inquiry and convincing demonstration that no proper jury list had been certified or filed. The record in the case does not show how the grand jury was selected or whether

or not the clerk of the board of supervisors certified a grand jury list to the circuit clerk. In the absence of such a record we cannot consider defendant in error's contention.

Of the twenty items of objection to the indictments on their faces only two are presented and argued by defendant in error in this court. The first is that counts 8 and 9 of the indictments do not properly charge the crime of confidence game. These counts are in the language specifically prescribed by the statute: "In every indictment under the preceding section, [confidence game] it shall be deemed and held a sufficient description of the offense, to charge that the accused did, on, etc., unlawfully and feloniously obtain, or attempt to obtain, (as the case may be,) from AB (here insert the name of the person defrauded or attempted to be defrauded,) his money (or property, in case it be not money,) by means and by use of the confidence game." (Ill. Rev. Stat. 1949, chap. 38, par. 257.) We find that these counts are legally sufficient to charge the offense. We further hold that the confidence of a body politic may be imposed upon just as may that of a person or a private corporation. Section 1.05 of the act dealing with the construction of statutes (Ill. Rev. Stat. 1949, chap. 131, par. 1.05,) provides that the words "person" or "persons" as well as all words referring to or importing persons may extend and be applied to bodies politic and corporate as well as individuals. In *People* v. *Goodhart,* 248 Ill. 373, we held that the confidence game statute properly applied in the case of fraud upon a private corporation and that it was not necessary that the indictment name the individuals whose confidence had been betrayed.

The remaining point argued by counsel for defendant in error involves those forgery counts which allege the forging of the name of a fictitious payee as an endorsement and the uttering of such instruments. The argument, briefly stated, is that by paragraph 3 of section 9 of the Negotiable Instrument Law, (Ill. Rev. Stat. 1949, chap. 98, par. 29,)

the State warrants in question, having the name of a fictitious payee known to be such by the maker, are rendered bearer paper and that consequently any endorsement would be legally superfluous; that since by definition the false writing in criminal forgery must have an intrinsic ability *inter partes* to alter legal relationships, the warrants cannot be the subject of forgery and the counts in question should be quashed.

The fallacy in this argument lies in the assumption that a State Auditor's warrant is a negotiable instrument. To be a negotiable instrument, an instrument payable in money must contain an unconditional promise or order to pay a sum certain in money. (Ill. Rev. Stat. 1949, chap. 98, par. 21.) An order or promise to pay out of a particular fund is not unconditional. (Ill. Rev. Stat. 1949, chap. 98, par. 23.) Section 17 of article IV of the constitution of 1870 provides: "No money shall be drawn from the treasury except in pursuance of an appropriation made by law, and on the presentation of a warrant issued by the auditor thereon; and no money shall be diverted from any appropriation made for any purpose, or taken from any fund whatsoever."

Section 1 of the statute in relation to warrants (Ill. Rev. Stat. 1949, chap. 146½, par. 1,) provides: "No warrant payable on demand shall hereafter be drawn upon the Treasurer of the State or of any county, township, or other municipal corporation, or against any fund in his possession unless at the time of the drawing there is sufficient money in the appropriate fund in the treasury to pay the warrant." Thus, if a State warrant is drawn when there is no appropriation made by law, or insufficient money in the appropriate fund, the warrant would be void and would create no legal liability on the part of the State.

In the case of *People ex rel. Hurd* v. *Johnson,* 100 Ill. 537, we considered the question as to whether county warrants or orders were negotiable paper. We said: "We

regard the rule well settled, by considerations of public policy as well as by a decided preponderance of authority, that warrants or orders drawn by one municipal officer upon another, in the disbursements of the funds of the municipality and payment of its indebtedness, are not to be regarded as negotiable or commercial paper, cutting off equities against the corporation." In that opinion we explained that one of the reasons why negotiability did not attach was that such paper was payable out of a particular fund, *i.e.*, such moneys as might happen to be in the treasury not otherwise appropriated, while it was essential to commercial paper that it be payable absolutely and at all events. We concluded: "This of itself shows that such orders or warrants are not to be regarded as commercial paper. These considerations, when taken in connection with the manifest objects and purposes of the legislature in providing for such orders, as heretofore stated, clearly show they were not intended to be included in that class of instruments provided for in chapter 98 of the Revised Statutes, entitled 'Negotiable Instruments'."

All of the warrants here in question indicate that they are drawn upon or are to be charged to certain accounts or funds, for they carry upon their faces such designations as "Road Fund" and the like, but whether or not we regard those provisions in the warrants as important or controlling we arrive at the same conclusion, for it is provided by statute that "All money, belonging to or for the use of the State, paid into the treasury thereof, not belonging to any special fund in the State treasury, shall constitute the general revenue fund." (Ill. Rev. Stat. 1949, chapter 127, par. 140.) Section 8 of the statute in relation to the Auditor of Public Accounts (Ill. Rev. Stat. 1949, chap. 15, par. 8,) provides that a State warrant is an order by the Auditor upon the Treasurer for the payment of the amount due as ascertained by the Auditor. Section 10 of the act in relation to the State Treasurer, (Ill. Rev. Stat. 1949,

chap. 130, par. 10,) specifies that the Treasurer cannot pay out of the treasury any money "except upon the warrant of the Auditor."

Thus, an order by the State Auditor upon the Treasurer is an order to pay out of a particular fund whether out of the general revenue fund or some other fund. It is not an order to pay absolutely or in any event, nor does it pledge the general credit of the State. Such warrants do not have the attributes of negotiable paper. While the decision is not controlling here, it is noteworthy that the court of claims of this State has held that a State Auditor's warrant, illegally drawn, extends no liability against the State even though in the hands of a person who would be a holder in due course if the instrument were negotiable. (*American National Bank of Lincoln* v. *State,* 4 Ill. Ct. of Claims, 170.) The fact that State Auditor's warrants often do pass as negotiable paper and are treated as such cannot impart the attributes of negotiability.

The law is that the Negotiable Instrument Law applies to negotiable instruments only. (10 Corpus Juris Secundum 423.) Section 190 of that act (Ill. Rev. Stat. 1949, chap. 98, par. 213,) provides that where the term "instrument" is used in the act it means "Negotiable Instrument." Thus where section 9 of the Negotiable Instrument Law, defining what is bearer paper, uses the term "instrument" it means "negotiable instrument." We hold, therefore, that paragraph 3 of section 9 of the Negotiable Instrument Law cannot be applied to the State Auditor's warrants in question though the name of the payee of those warrants is alleged to be fictitious.

The many other objections in the motions to quash relating to the legal sufficiency of the indictments themselves have not been argued by defendant in error on appeal, though several of such objections have been argued by the People. We have examined these other objections and have found them to be without merit. In this category

we include objections as to alleged multiplicity and duplicity and as to the legal sufficiency of the larceny and forgery counts; in fact, all of the objections raised upon the motions to quash.

It is, therefore, the order of this court that the order of the circuit court of Sangamon County quashing the indictments be reversed and the causes are remanded to that court for further proceedings.

*Reversed and remanded.*